Charles M. LAFARGUE, Plaintiff,

v.

UNION PACIFIC RAILROAD,
Defendant and Third–
Party Plaintiff,

v.

Asplundh and Timco Scrap Processing,
Inc., Third–Party Defendants.

No. CIV. A. G–00–762.

United States District Court,
S.D. Texas,
Galveston Division.

July 31, 2001.

John A. Carwile, Steinburg Carwile et al, Houston, TX, for Plaintiff.

Douglas W. Poole, McLeod Alexander et al, Galveston, TX, William J. Collins, III, Garcia & Villarreal, LLP, for Defendants.

## ORDER SEVERING THIRD–PARTY DEFENDANT ASPLUNDH AND GRANTING ASPLUNDH'S MOTION TO TRANSFER VENUE

KENT, District Judge.

Plaintiff Charles M. Lafargue bought suit against Defendant Union Pacific Railroad ("Union Pacific") for personal injuries. Defendant Union Pacific thereafter joined Asplundh as a Third–Party Defendant. Now before the Court is Asplundh's Motion to Dismiss or in the Alternative Transfer Venue based upon a forum selection clause. For the reasons discussed below, Asplundh's Motion to Transfer Venue is **GRANTED**.

### I. BACKGROUND

On December 26, 2000, Plaintiff, an employee of the Union Pacific, brought suit against Union Pacific for injuries allegedly sustained after tripping on vegetation adjacent to the Union Pacific railroad tracks where Plaintiff was working.[1] Some months later, on June 1, 2001, Union Pacif-

---

1. Plaintiff also brings suit for a second incident in which he alleges he was struck by a piece of metal protruding from a moving train. This second incident did not involve Asplundh.

ic filed a Third–Party Complaint asserting its right to contractual indemnity, or, in the alternative, contribution by statute and common law.

Union Pacific and Asplundh were parties to a contract under which Asplundh agreed to provide vegetation control services along Union Pacific's track. The parties' contract contained an indemnification clause of relevance to this dispute:

> The Contractor [Asplundh] shall indemnify ... the Railroad ... from any and all liability ... arising from or growing out of any injury to or death or any persons whomsoever .... The right to indemnify [sic] shall accrue when such injury, death, loss or damage occurs from any cause and is associated in whole or in part with the work performed under this agreement, a breach of the agreement or the failure to observe the health and safety provisions of the agreement or any activity or omission arising out of performance or nonperformance of this agreement. However, the Contractor shall not indemnify the Railroad to the extent the loss is caused by the negligence of the Railroad.

Asplundh has now filed a Motion to Dismiss or in the Alternative to Transfer Venue to the District of Nebraska. Asplundh bases this Motion solely on a forum selection clause contained in its agreement with Union Pacific. This clause states that:

> This agreement shall be governed, construed, and enforced in accordance with the laws of the State of Nebraska. Litigation arising out of or connected with

this agreement may be instituted and maintained in the courts of the State of Nebraska only, and the parties consent to jurisdiction over their person and over the subject matter of any such litigation, in those courts, and consent to service of process issued by such courts.

## II. DISCUSSION

Several cases binding this Court have discussed the appropriate legal standard for a district court to apply when analyzing a Motion to Dismiss or Transfer based upon a forum selection clause. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–32, 108 S.Ct. 2239, 2243–45, 101 L.Ed.2d 22 (1988) (ordering the district court to utilize § 1404(a) in case in which another federal forum was available, but noting that the parties agreed dismissal was not appropriate); *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 11–20, 92 S.Ct. 1907, 1912–18, 32 L.Ed.2d 513 (1972) (dismissing when London, England had been selected); *Haynsworth v. The Corporation*, 121 F.3d 956, 961–63 (5th Cir.1997) (following *Bremen* and affirming dismissal in favor of a London forum); *International Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114–15 (5th Cir.1996) (affirming dismissal when a state court forum had been specified). None of these cases, however, directly addresses the issue of what standard a district court should apply when another federal forum is available for transfer.[2] *See Brock v. Baskin–Robbins USA Co.*, 113 F.Supp.2d 1078, 1082–85 (E.D.Tex.2000) (discussing and resolving

---

**2.** In *Stewart* the Supreme Court held that 28 U.S.C. § 1404(a) is the proper vehicle by which to analyze a request to transfer to a different federal court in order to enforce a forum selection clause. *See Stewart*, 487 U.S. at 29, 108 S.Ct. at 2243. However, the parties "[did] not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C.

§ 1406(a)" because venue was otherwise proper under 28 U.S.C. § 1391(c). *Id.* at 29 n. 8, 108 S.Ct. at 2243. Thus, the Supreme Court was not faced with deciding whether dismissal could ever be proper. One could read the Court's opinion as endorsing the view that dismissal is improper, but such is, at a minimum, beyond the reach of the Court's holding.

this issuing); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 238–39 (S.D.Tex.1997) (analyzing under § 1404(a)); *see also Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298–99 (3d Cir.2001) (affirming dismissal, but acknowledging that the better practice is to transfer a case under § 1404(a) when another federal forum is available).

■ The question of what standard to use might, arguably, become further complicated in cases, such as this, in which a third-party defendant brings the motion to dismiss or transfer. A motion to transfer venue filed by a third-party defendant presents an "atypical" situation. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 209 (5th Cir. 1996). This is so because statutory venue considerations do not protect a third-party brought into a lawsuit under Fed.R.Civ.P. 14. *See Gundle Lining*, 85 F.3d at 209. Thus, a third-party defendant generally cannot successfully move to transfer venue based upon its convenience, as personal jurisdiction is the third-party defendant's principal protection against suit in an inconvenient forum. *See id.* However, a district court may " 'take account of venue considerations when exercising its discretion to decide whether to … sever the third-party claim.' " *Id.* (quoting Charles Alan Wright, et al, 6 Federal Practice and Procedure § 1445 (2d ed.1990)).

■ This Court now determines that when venue is otherwise proper in a district court, § 1404(a) is the proper means to analyze a Motion to Transfer or Dismiss based upon a forum selection clause. *See Brock*, 113 F.Supp.2d at 1082–85; *Texas Source Group, Inc.*, 967 F.Supp. at 238–39; *see also Salovaara*, 246 F.3d at 298–99. However, in an effort to synthesize (1) the policy of enforcing forum selection clauses when fair, with (2) a third-party's typical inability to complain of venue, the Court determines that the movant's status as a third-party defendant must weigh in favor of retention in its § 1404(a) analysis.

■ The Court now turns to its analysis under 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The movant bears the burden of demonstrating to the Court that it should, in its sound discretion, decide to transfer the action. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (holding that the decision to transfer rests within the sound discretion of the district court); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) (holding that the defendant bears the burden of demonstrating that the action should be transferred).

■ Ordinarily, the Court weighs the following factors when deciding whether a venue transfer is warranted: the availability and convenience of witnesses and parties, the location of counsel, the location of books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)). Additionally, when a forum selection clause purports to govern the choice of venue, the Court must address the convenience of the chosen forum given both parties' expressed preference for that venue. *See Stewart*, 487 U.S. at 29–30, 108 S.Ct. at 2244. Moreover, the

Court may also consider the relative bargaining power of the parties in assessing the effect of a forum selection clause on the resolution of a § 1404(a) motion. *See id.* at 29, 108 S.Ct. at 2244.

Here, Asplundh relies exclusively upon the forum selection clause as support for its Motion to Transfer. Often, such an argument will be insufficient to persuade the Court to effect a transfer. *See, e.g., Choice Equip. Sales, Inc. v. Captain Lee Towing, L.L.C.,* 43 F.Supp.2d 749, 754 (S.D.Tex.1999). In *Choice Equip.,* this Court retained an action despite a forum selection clause when the other Section 1404(a) factors "tend[ed] to be neutral or to support retention of this action." *Id.* Accordingly, a third-party defendant would generally be wise to articulate reasons why the array of § 1404(a) factors support its transfer effort. Although the present Motion fails to take these steps, the Third-Party Plaintiff has likewise focused its argument exclusively on the propriety of transferring a third-party action based upon a forum selection clause, again without addressing the other § 1404(a) factors.

A forum "selection clause provides some indication that the convenience of the parties would presumably be better served by transfer" to Nebraska. *Id.* Thus, the Court starts with this presumption and analyzes whether the other § 1404(a) factors, such as the convenience of witnesses, the location of the alleged wrong, etc., overcome this presumption.

In this case, the Court finds that the presumption in favor of transfer is particularly weighty. The contract containing the forum selection clause was entered into by two commercial entities, which were presumably represented by counsel. These parties decided that they would settle their disputes in Nebraska. Certainly, Third-Party Plaintiff Union Pacific, a monolithic company, was not coerced into agreeing to litigate in Nebraska. This Court has long and steadfastly enforced contracts as written, particularly when sophisticated commercial entities are involved.

■ Union Pacific's basic argument against enforcing this clause is that it would be forced to re-litigate, and possibly be subject to collateral estoppel on, the issues raised in Plaintiff's personal injury suit in another forum. *See Martin v. Pomeroy Computer Res., Inc.,* 87 F.Supp.2d 496, 504 (W.D.N.C.1999). However, facing such issues is common, as parties seeking indemnification often do not pursue that remedy until after they have been found liable to a plaintiff. Indeed, at present, Union Pacific's claim against Asplundh is merely contingent. Accordingly, courts have not hesitated to enforce forum selection clauses operating in favor of a third-party defendant. *See Pascalides v. Irwin Yacht Sales N., Inc.,* 118 F.R.D. 298, 301–303 (D.R.I.1988) (collecting authorities); *Mississippi River Bridge Auth. v. M/V Pola De Lena,* 567 F.Supp. 311, 312 (E.D.La.1983) (applying *Bremen* and dismissing because of the choice of a Spanish forum); *but see Martin,* 87 F.Supp.2d at 504. Thus, Union Pacific's concerns, while legitimate, are not sufficient to overcome a freely negotiated agreement.

Further, these parties easily could have added a caveat to their forum selection clause stating that third-party actions are exempted from its reach. This would have made sense from Union Pacific's standpoint, and Asplundh would have retained the protections of personal jurisdiction requirements to prevent suit in unfair forums. However, they did not do so. Instead, the parties clearly and unambiguously agreed that "[l]itigation arising out of or connected with this agreement may be instituted and maintained in the courts of the State of Nebraska only." Whatever duty Asplundh owed Union Pacific was

undeniably created by this contract, and thus an action for indemnity or contribution based upon Asplundh's duty arises out of or is connected with the contract. *See Pascalides,* 118 F.R.D. at 302. Thus, Union Pacific must seek indemnity in Nebraska.

The only factor favoring retention, the efficiencies of proceeding with the third-party claim in this forum, is also fairly subsumed by the parties' bargain, of which the forum selection clause is a part. The parties negotiated for a Nebraska forum. Nebraska is but one of the dozens of states in which Union Pacific operates. Thus, in agreeing to that forum, Union Pacific implicitly agreed to shoulder the costs of pursuing any third-party claims that should arise versus Asplundh in a forum different from that where an injured plaintiff would likely bring in the vast majority of potential cases. Absent extraordinary circumstances, Union Pacific cannot now avoid its agreement by complaining that it made too costly a deal.

### III. CONCLUSION

For the reasons set forth in more detail above, Third–Party Defendant Asplundh's Motion to Transfer is **GRANTED**. Asplundh is **ORDERED SEVERED** from this action and Union Pacific's Third Party Complaint versus Asplundh is hereby **TRANSFERRED** to the United States District Court for the District of Nebraska.

Although this result somewhat conflicts with ideal notions of judicial efficiency, the desire of this Court to attain a high level of efficiency cannot be accomplished at the expense of freely negotiated contractual rights. After transfer, of course, the Court surmises that the Honorable Nebraska Court may well stay consideration of that action in order to ascertain what result transpires in the underlying dispute remaining here in Galveston.

**IT IS SO ORDERED.**