**SEABULK OFFSHORE, LTD. Plaintiff,**

v.

**DYN MARINE SERVICES, INC. and AMERICAN HOME ASSURANCE CO. Defendant.**

**Civil Action No. G–02–170.**

United States District Court, S.D. Texas, Galveston Division.

May 22, 2002.

---

752

Glenn R Legge, Legge Farrow Kimmitt and McGrath, Houston, TX, for plaintiff.

Henry A King, King LeBlanc et al, New Orleans, LA, G Byron Sims, Brown Sims PC, Houston, TX, for defendant.

## *ORDER DENYING DYN MARINE'S MOTION TO DISMISS AND GRANTING DYN MARINE'S MOTION TO TRANSFER VENUE*

KENT, District Judge.

This diversity action arises from a dispute between Plaintiff Seabulk Offshore, Ltd. ("Seabulk"), Defendant Dyn Marine Services Company ("Dyn") and Defendant American Home Assurance Company ("AHAC") over the Parties' obligations (or lack thereof) pursuant to an insurance policy issued by AHAC to Dyn last year. On May 13, 2002, Dyn filed a Motion to Dismiss for Improper Venue, or alternatively, to Transfer Venue to the United States District Court for the Eastern District of Virginia. For the reasons articulated below, Dyn's Motion to Dismiss is **DENIED** and Dyn's Motion to Transfer Venue is hereby **GRANTED**.

### I.

Seabulk owns the SEABULK NEW HAMPSHIRE, a vessel that recently collided with the tug MISS DEBBIE and the tug MISS SUE. Consequently, Seabulk now has two personal injury actions pending against it. The first of these actions, brought by crew members of the MISS DEBBIE, is currently on file in this Court. The second action, instituted by crew members of the MISS SUE, is pending in the Louisiana state court system. Seabulk contends that AHAC is obligated to defend and indemnify Seabulk in both underlying actions pursuant to an agreement ("Manning Agreement") executed by Seabulk and Dyn on February 6, 2001.[1] The "Insurance" provision of the Manning Agreement provides in part that Dyn "shall procure and maintain with respect to and for the duration of this [a]greement .. Commercial General Liability Insurance Coverage for bodily injury." The provision further states that, "with regard to [this] insurance polic[y] . . . [Seabulk] shall be named an additional insured."

Dyn purportedly complied with its contractual obligations by obtaining a comprehensive general liability insurance policy from Defendant American Home Assurance Company ("AHAC") under which Seabulk was named as an additional insured. Nevertheless, AHAC recently denied Seabulk's demand for defense and indemnity with respect to the underlying action pending in this Court. Seabulk anticipates that AHAC will likewise deny its request for defense and indemnity in the underlying action on file in Louisiana. Consequently, Seabulk filed this lawsuit seeking a declaratory judgment that AHAC is obligated to defend and indemnify Seabulk in each of the underlying lawsuits. Alternatively, Seabulk seeks damages from Dyn for breach of contract and negligent misrepresentation.

### II.

■■ Dyn initially urges the Court to dismiss Seabulk's claims pursuant to the Manning Agreement's forum selection clause, which reads: "[Seabulk] and [Dyn] agree that any legal suit, action, or proceeding arising out of or relating to this Agreement shall be instituted and maintained exclusively in the federal courts sitting in Virginia." The Court cannot grant this request, however, because "when venue is otherwise proper in a district court, [28 U.S.C.] § 1404(a) is the proper means to analyze a Motion to Transfer or Dismiss based upon a forum selection clause."[2]

---

1. Pursuant to the Manning Agreement, Dyn provided the crew that was on board the SEABULK NEW HAMPSHIRE at the time of both collisions.

2. The Parties do not dispute that venue "is otherwise proper" in this case pursuant to 28 U.S.C. § 1391.

*Lafargue v. Union Pacific Railroad,* 154 F.Supp.2d 1001, 1004 (S.D.Tex.2001); see also *Brock v. Baskin–Robbins U.S.A. Co.,* 113 F.Supp.2d 1078, 1081 (E.D.Tex.2000); *Tex. Source Group, Inc. v. CCH, Inc.,* 967 F.Supp. 234, 238–39 (S.D.Tex.1997). Section § 1404(a) allows a court to *transfer* a case, but it does not provide for the dismissal that Dyn seeks. *See* 28 U.S.C. § 1404(a) ("A district court may *transfer* any civil action ...."). Consequently, Dyn's Motion to Dismiss is hereby **DE-NIED.**[3]

### III.

■ Having denied Dyn's Motion to Dismiss, the Court must now consider whether a § 1404(a) transfer is warranted. Section 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, Dyn bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem.Co.,* 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred). The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet,* 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.,* 490 F.2d 155, 158 (5th Cir.1974) (declaring that a transfer of venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

■ In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.,* 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805

---

**3.** Dyn proposes that the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), rather than § 1404(a), articulates the standard applicable to the Manning Agreement's forum selection clause. *Bremen* does not apply here, however, for two reasons: (1) *Bremen* arose in admiralty; and (2) the contractually designated forum in *Bremen* was England. Although federal courts are free to evaluate forum selection clauses in accordance with federal common law in admiralty cases, this rule does not apply in diversity cases such as this one. Moreover, 28 U.S.C. § 1404(a) does not provide a mechanism for transfer to a foreign forum. It does expressly provide, however, for transfer to another federal court (i.e. the Eastern District of Virginia).

F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics*, 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Moreover, when a forum selection clause purports to govern the choice of venue, the Court must address the convenience of the chosen forum given both parties' expressed preference for that venue. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988).

## IV.

■ The Manning Agreement's forum selection clause "provides some indication that the convenience of the parties would presumably be better served by transfer" to Virginia. *Choice Equip. Sales, Inc. v. Captain Lee Towing, L.L.C.*, 43 F.Supp.2d 749, 754 (S.D.Tex.1999). In this case the presumption in favor of transfer is particularly weighty. The Manning Agreement, which was entered into by two commercial entities that were presumably represented by counsel, clearly indicates an intent to settle all later disputes in Virginia.[4] The Court therefore begins by giving much credence to this strong presumption and analyzes whether the other § 1404(a) factors overcome its applicability. *See Lafargue*, 154 F.Supp.2d at 1005.

### 1. *Availability and Convenience of Witnesses and Parties*

As this Court has often stated, the convenience of key witnesses is the most significant aspect of a motion to transfer venue. *See, e.g., Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp.

1163, 1166 (S.D.Tex.1994); *Continental Airlines*, 805 F.Supp. at 1396. In the instant case, the Parties' corporate representatives who will testify at trial are primarily located in three states: Virginia (where Dyn is headquartered), New York (where AHAC is located) and Florida (where Seabulk is located). Notably, Texas is nowhere on this list. Litigating this matter in Virginia (a forum where approximately one third of the witnesses reside) will likely prove more convenient than a trial in Texas (where no Parties and no witnesses are located). Moreover, Virginia is situated between New York and Florida, whereas Texas is quite some distance from all three states. As such, a Virginia venue will lessen the collective travel time of the trial attendees. Therefore, this factor favors transfer.

### 2. *Location of Parties*

The Parties to this action are based in Florida, Virginia and New York. Given that one of the Parties is located in the proposed forum and none are based here, this factor favors transfer.

### 3. *Location of Counsel*

Although all three Parties have retained counsel in the Southern District of Texas, this factor disfavors transfer only slightly. *See Dupre*, 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little or no consideration).

### 4. *Location of Books and Records*

It is undisputed that no relevant books or records are located in Texas. On the other hand, at least a portion of the documents related to Seabulk's allegations are located at Dyn's Virginia headquarters.

---

**4.** The Court acknowledges that AHAC did not choose Virginia, given that it was not a party to the Manning Agreement. However, AHAC did not choose Texas either. And further-

more, AHAC has voiced no objection to Dyn's Motion to Transfer Venue. Thus, the Court finds no inherent unfairness in transferring this entire dispute to Virginia.

Given that some books and records are stored in Virginia, coupled with the absence of any pertinent records whatsoever in this forum, the Court finds that this factor weighs in favor of transfer.

### 5. *Trial Expenses*

In situations where the parties and witnesses do not live in close proximity to Galveston, the Court closely examines the cost of trying the case in this District. *See Henderson,* 918 F.Supp. at 1059. In fact, "[t]he Court will frequently transfer a case when the majority of the key witnesses live more than 100 miles from Galveston and thus outside the subpoena reach of the Court." *Id.* This is such a case. All three Parties, and all of the potential witnesses, are located more than 100 miles from Galveston. However, one Party and a number of the witnesses reside within the Eastern District of Virginia. Thus, this factor favors transfer.

### 6. *Location of the Alleged Wrong*

Seabulk alleges two "wrongs" in this case: AHAC's denial of coverage and Dyn's alleged misrepresentations. AHAC's decision to deny coverage was presumably made in New York. Dyn's alleged misrepresentations arose during negotiations that were conducted between Dyn personnel in Virginia and California and Seabulk personnel in Florida and Louisiana. Thus, a portion of the conduct at issue allegedly took place in Virginia. On the other hand, *none* of the conduct underlying this lawsuit is alleged to have taken place in Texas. Thus, while Virginia fails to constitute the sole location of the alleged wrongs, it is a more logical forum for this action than Texas. As such, this factor favors transfer.

### 7. *Plaintiff's Choice of Forum and Possibility of Delay*

Seabulk's choice to litigate this case in the Galveston Division of the Southern District of Texas is entitled to great deference. *See United Sonics,* 661 F.Supp. at 683 (emphasizing that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). Nevertheless, the Court must carefully probe Seabulk's choice of forum, given that it is headquartered elsewhere. *See Dupre,* 810 F.Supp. at 828 ("[T]his Court is loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification."). Given that this lawsuit is tangentially connected to the Southern District of Texas (because one of the underlying lawsuits is pending here), the Court does not believe that Seabulk's choice of forum was motivated by impermissible forum shopping. However, because this connection is minimal at best, Seabulk's forum choice proves inconclusive on the venue issue. And because the Court has yet to schedule a trial date for this matter, it is unlikely that a transfer at this juncture will significantly delay the resolution of Seabulk's claims. This factor therefore fails to compel retention of this action in Galveston.

In sum, the Court finds that the relevant venue factors support the presumption raised by the Manning Agreement's forum selection. Because Dyn has successfully carried its burden of demonstrating that a transfer to Virginia is necessary to serve the interests of justice and for the convenience of all involved, Dyn's Motion to Transfer Venue is hereby **GRANTED**. Accordingly, this lawsuit is now **TRANSFERRED** to the United States District Court for the Eastern District of Virginia.

IT IS SO ORDERED.