**Albert C. ELLIOTT, Individually and on Behalf of Those Similarly Situated Plaintiffs,**

v.

**CARNIVAL CRUISE LINES and Carnival Corporation Defendants.**

**No. CIV.A. G–02–473.**

United States District Court, S.D. Texas, Galveston Division.

Oct. 30, 2002.

---

John W. Stevenson, Jr., Stevenson & Ammons, Houston, TX, for Plaintiff.

Susan Delores Noe, Fowler Rodriguez, Houston, TX, for Defendant.

*ORDER GRANTING DEFENDANTS CARNIVAL CRUISE LINES AND CARNIVAL CORPORATION'S MOTION TO TRANSFER UNDER 1404(a) AND DENYING DEFENDANTS CARNIVAL CRUISE LINES AND CARNIVAL CORPORATION'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(3)*

KENT, District Judge.

On July 1, 2002, Plaintiff Albert C. Elliott ("Elliott") filed Plaintiff's Original Complaint and Request for Class Certification, seeking relief from Defendants Carnival Cruise Lines and Carnival Corporation ("Carnival") for alleged damages he and other passengers suffered resulting from a truncated or terminated Carnival cruise. On September 9, 2002, Carnival filed a Memorandum in Opposition to Class Certification and a Motion to Dismiss Under Fed.R.Civ.P. 12(b)(3) and (6), or, in the Alternative, to Transfer Under 28 U.S.C. §§ 1631, 1404(a), and/or 1406(a). Elliott timely responded to these Motions. For the reasons articulated below, Carnival's Motion to Dismiss Under 12(b)(3) is **DENIED**; Carnival's Motion to Transfer is **GRANTED**; Elliott's Request for Class Certification and Carnival's Motion to Dismiss Under 12(b)(6) are **NOT REACHED**; and the case is hereby **TRANSFERRED** to the United States District Court for the Southern District of Florida, Miami Division.

### I. Factual Background

This is a negligence action brought pursuant to this Court's admiralty jurisdiction under 28 U.S.C. § 1333. The damages alleged in this case stem from the disruption of a Carnival cruise on which Elliott; his wife, Sandra; their two children, James and Elizabeth; and James's friend, Sean Fields, were passengers. Elliott purchased five cruise tickets, which cost approximately eight hundred ten dollars ($810.00) each, through a travel agent. In an affidavit, he alleges that he received the "nonrefundable" tickets in late May.

The cruise aboard the *Celebration* was scheduled to leave Galveston, Texas, on June 22, 2002; to make two stops-one in Cozumel and the other either in Playa del Carmen or in Cancun; and to return to Galveston on June 27, 2002. Elliott alleges that the *Celebration* did not leave Galveston on time and that, when he boarded the ship, he noticed that the engine "did not sound normal." Before the *Celebration* arrived behind schedule at its first stop in Cozumel, an announcement was made that the ship was having engine problems and would not make its other scheduled stop. At this point, due to frustration of the anticipated itinerary, Elliott and his family decided to end their cruise in Cozumel. They flew from Cozumel to Houston and retrieved their luggage from the ship in Galveston.

On July 1, 2002, Elliott filed suit against Carnival in this Court, contravening a forum-selection clause contained in his Passenger Ticket Contract, which requires suit in Florida. The clause states:

15. It is agreed by and between the Guests and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami–Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

Relying on this clause, Carnival filed a Motion to Dismiss Under Fed.R.Civ.P. 12(b)(3), or, in the Alternative, to Transfer Under 28 U.S.C. §§ 1631, 1404(a), and/or 1406(a). The Court now turns to this Motion.

## II. Legal Analysis

### A. Proper Treatment of Motion

Based on the forum-selection clause in its Passenger Ticket Contract, Carnival moved to dismiss this case for improper venue, or, in the alternative, to have the case transferred to the federal forum specified in the clause. If this case were before the Court pursuant to federal diversity jurisdiction, clear precedent would guide the Court's analysis of Carnival's Motion: When a federal court sitting in diversity must decide whether to enforce a forum-selection clause in which the parties have agreed to resolve their disputes in another federal court, 28 U.S.C. § 1404(a) governs the Court's decision. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 27– 29, 108 S.Ct. 2239, 2242–43, 101 L.Ed.2d 22 (1988); *see also Seabulk Offshore, Ltd. v. Dyn Marine Servs., Inc.,* 201 F.Supp.2d 751, 753–54 (S.D.Tex.2002) (Kent, J.) (diversity case) (holding that when venue is otherwise proper in a federal district court, § 1404(a) is the proper means to analyze a request to dismiss or to transfer based on a forum-selection clause specifying a different federal district court); *Lafargue v. Union Pac. R.R.,* 154 F.Supp.2d 1001, 1003–04 (S.D.Tex.2001) (Kent, J.) (same); *Brock v. Baskin–Robbins USA Co.,* 113 F.Supp.2d 1078, 1082–83 (E.D.Tex.2000) (same); *cf. Int'l Software Sys., Inc. v. Amplicon, Inc.,* 77 F.3d 112, 115 (5th Cir.1996) (diversity case) (affirming dismissal when § 1404(a) could not

apply because the forum-selection clause mandated a state forum).

However, since this matter is before this Court sitting in admiralty, the Court's analysis must distinguish from the United States Supreme Court's decision in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), an admiralty case in which § 1404(a) was *not* used to enforce a forum-selection clause. *Cf., e.g., Seabulk,* 201 F.Supp.2d at 754 n. 3 (*"Bremen* does not apply here, however, for two reasons: (1) *Bremen* arose in admiralty; and (2) the contractually designated forum in *Bremen* was England."); *Brock,* 113 F.Supp.2d at 1083("Because *Bremen* was an admiralty case, the Supreme Court could decide the forum-selection clause issue by applying federal common law. Moreover, because the contractually designated forum was England, 28 U.S.C. § 1404(a) did not apply.").

Rather, the United States Supreme Court's decision in *Stewart* makes clearer when and how courts should apply *Bremen.* In *Stewart,* a diversity case, the Court implied that, *when applicable,* § 1404(a) governs motions to transfer venue based on forum-selection clauses: "[T]he *Bremen* case may prove 'instructive'[1] . . ., [but] the first question for consideration should [be] whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue . . . ." *Stewart,* 487 U.S. at 28–29, 108 S.Ct. at 2243.

■ Following *Stewart,* then, this Court first asks whether § 1404(a) controls Carnival's request to transfer venue and finds that it does. Section 1404(a) governs motions to transfer to a more convenient fo-

---

1. *Bremen* held that forum-selection clauses in freely negotiated private agreements, "unaffected by fraud, undue influence, or overwhelming bargaining power . . . should be given full effect," unless enforcement would be unreasonable or unjust. *Bremen,* 407 U.S. at 12–15, 92 S.Ct. at 1914–16.

rum in admiralty claims as well as in diversity claims. *See Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960); *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1059 n. 1 (S.D.Tex.1998) (Kent, J.) (admiralty case) (applying § 1404(a) to a defendant's request to transfer to another federal court, based on a forum-selection clause).[2] Because § 1404(a) applies to admiralty cases in the same way that it applies to diversity cases, this Court now holds that when a federal court sitting *either* in admiralty or in diversity must decide whether to enforce a forum-selection clause in which the parties have agreed to resolve their disputes in another federal court, 28 U.S.C. § 1404(a) governs the Court's decision.[3]

■ Carnival moves to dismiss this case for improper venue, pursuant to Fed. R.Civ.P. 12(b)(3). Because venue is otherwise proper in this Court,[4] and the forum-selection clause specifies a different federal court as the appropriate venue, § 1404(a) is the proper means to analyze this motion. Section 1404(a) allows a transfer, not dismissal. *See* 28 U.S.C. § 1404(a); *Seabulk*, 201 F.Supp.2d at 754. Consequently, Carnival's Motion to Dismiss Under 12(b)(3) is hereby respectfully DENIED.

*B. Motion to Transfer Venue*

■ Having denied Carnival's Motion to Dismiss Under Fed.R.Civ.P. 12(b)(3), the Court now considers whether transfer under § 1404(a) is warranted. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The movant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed."). The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436 ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."); *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974) (declaring that whether to transfer venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

■ Ordinarily, the Court considers the following factors when deciding whether transfer is warranted: the availability and convenience of witnesses and parties; the location of counsel; the location of perti-

---

2. The only significant difference between *LeBouef* and the instant case is that, in *LeBouef*, the defendant moved only to transfer, not to dismiss. Thus, the Court was not faced with deciding whether dismissal was proper. *LeBouef*, 20 F.Supp.2d at 1059.

3. The Court notes that *Bremen* still guides the determination of whether the forum-selection clause, itself, is valid. But § 1404(a), where applicable, provides the mechanism for enforcing the clause.

4. Neither party disputes that venue is "otherwise proper" in this Court.

nent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex.1996) (Kent, J.); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993) (Kent, J.); *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (Kent, J.) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)). But when a valid forum-selection clause purports to govern venue, the Court must address the convenience of the designated forum given the parties' expressed preference for that venue. *See Stewart,* 487 U.S. at 29, 108 S.Ct. at 2244; *Seabulk,* 201 F.Supp.2d at 755.

*1. Validity of Forum–Selection Clause*

■ The forum-selection clause at issue is essentially identical to the clause analyzed by the United States Supreme Court in *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).[5] In *Carnival,* the plaintiffs, who lived in Washington state, filed suit against Carnival in federal district court in Washington for injuries sustained on a Carnival cruise, despite a forum-selection clause contained in their ticket which stated:

8. It is agreed by and between the passenger and the Carrier that all dis-

putes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country.

*Carnival,* 499 U.S. at 587–88, 111 S.Ct. at 1524. In evaluating the reasonableness of the forum-selection clause, the Court "refine[d] the analysis of *The Bremen* to account for the realities of form passage contracts," and concluded that the clause was enforceable despite the plaintiffs' arguments that the clause was "nonnegotiated" and that litigating in Florida would seriously inconvenience the Washington plaintiffs. *Id.* at 593–95, 111 S.Ct. at 1527–28. The Court emphasized that the clause passed scrutiny for "fundamental fairness": there was no indication that Carnival chose Florida as the dispute-resolution forum to discourage plaintiffs from filing suit; there was no evidence of fraud or overreaching in obtaining plaintiffs' acceptance of the clause; and plaintiffs conceded that they were given notice of the clause. *Id.* at 595, 111 S.Ct. at 1528. Carnival argues that the instant case is virtually identical to *Carnival Cruise Lines v. Shute.*

But Elliott argues that his case is more analogous to *Schaff v. Sun Line Cruises, Inc.,* 999 F.Supp. 924 (S.D.Tex.1998) (Kent, J.). In *Schaff,* the plaintiff purchased a ticket for $1,770.00 for a cruise that departed from and returned to Gal-

---

**5.** *Carnival* differs procedurally from the instant case. In *Carnival,* the district court granted summary judgment in the defendant's favor for lack of personal jurisdiction and dismissed the case. The Ninth Circuit reversed, holding that the district court did have personal jurisdiction and that the forum-selection clause should not be enforced. The Supreme Court reversed the Ninth Circuit's decision, holding that the forum-selection clause was enforceable. *See Carnival,* 499

U.S. at 589–94, 111 S.Ct. at 1525–28. But the decision, which had the effect of reinstating the district court's dismissal, did not address dismissal as opposed to transfer, nor did it overrule *Stewart.* *See BHP Int'l Inv., Inc. v. OnLine Exch., Inc.,* 105 F.Supp.2d 493, 496–97 (E.D.Va.2000) (discussing *Carnival*'s effect on *Stewart* and determining that § 1404(a) still governs the enforcement of forum-selection clauses where applicable).

veston. She received the ticket, which contained a forum-selection clause specifying Athens, Greece, as the litigation forum, three to four days before departing. If she had cancelled her cruise at that time, she would have forfeited the entire ticket price. Despite finding that the plaintiff had constructive notice of the terms of her ticket, this Court held that extrinsic factors prevented enforcing the clause. The extrinsic factors this Court cited in refusing to enforce the clause were (1) that the cruise began and ended in Galveston, Texas, but required suit in Athens, Greece, and (2) that the plaintiff could not have rejected the ticket without forfeiting the entire purchase price of $1,770.00. *Schaff*, 999 F.Supp. at 927.

Neither of these extenuating circumstances apply to render the clause in Elliott's ticket unenforceable. As the Supreme Court in *Carnival* held, Florida is not a "remote alien forum." *Carnival*, 499 U.S. at 594, 111 S.Ct. at 1528. In addition, although Elliott characterizes the tickets as "nonrefundable," he admits that he received them almost a month before departing, at which time, according to the ticket, fifty percent of the purchase price was refundable.

■ Thus, this Court agrees with Carnival that Elliott's case is more analogous to *Carnival Cruise Lines v. Shute* than to *Schaff v. Sun Line Cruises, Inc.* The only way in which Elliott's situation significantly differs from *Carnival* is that, unlike the plaintiffs in *Carnival*, Elliott does not *concede* that he had notice of the forum-selection clause. *See Carnival*, 499 U.S. at 590, 111 S.Ct. at 1525. However, on the facts of this case, notice is imputed to him. "Conditions and limitations in contracts for the carriage of passengers by water have been held valid, and when placed in the body of a passage contract for an ocean voyage, so as to be a part thereof, they become binding on the passenger by his

mere acceptance of the ticket within such a time as to give him an ample opportunity to examine its contents." *Carpenter v. Klosters Rederi A/S*, 604 F.2d 11, 13 (5th Cir.1979) (citations omitted); *see also Schaff*, 999 F.Supp. at 926; *Lemoine v. Carnival Cruise Lines, Inc.*, 854 F.Supp. 447, 448–49 (E.D.La.1994). The passenger need not have actual notice of the contents, and his failure to read the ticket does not preclude him from being bound by its terms. *See Carpenter*, 604 F.2d at 13; *Schaff*, 999 F.Supp. at 926; *Lemoine*, 854 F.Supp. at 448–49. On the first page of Elliott's Passenger Ticket Contract, in all capital letters, Carnival directs passengers' attention to the forum-selection clause, which Elliott does not argue is too small or otherwise illegible. Thus, despite his alleged lack of actual notice, Elliott had constructive notice of the terms of his contract.

For these reasons, the forum-selection clause in this case, like the clause in *Carnival Cruise Lines v. Shute*, is enforceable. Therefore, it is a valid consideration in this Court's transfer analysis under § 1404(a).

*2. Weighing the Venue Factors Under § 1404(a)*

■ The forum-selection clause "provides some indication that the convenience of the parties would presumably be better served by transfer" to Florida. *Lafargue*, 154 F.Supp.2d at 1005. The Court begins the analysis with this presumption and analyzes the other § 1404(a) factors to see if they can overcome it. *Id.*

Here, the clause weighs heavily in favor of transfer. The Supreme Court in *Carnival* noted the particular importance of enforcing these clauses in cruise lines' form passenger contracts. *Carnival*, 499 U.S. at 593–94, 111 S.Ct. at 1527 (suggesting that cruise lines have "special interests" in limiting litigation fora and that forum-se-

lection clauses have "salutary" effects for passengers as well); *cf. LeBouef,* 20 F.Supp.2d at 1061 (distinguishing a forum-selection clause in a seaman's employment contract from the *Carnival* clause); *Schaff,* 999 F.Supp. at 926–27 (distinguishing a cruise lines' forum-selection clause requiring suit in Greece from the *Carnival* clause).

### a. Availability and Convenience of Witnesses and Parties

This Court has often stated that the convenience of witnesses is the most important consideration. *See, e.g., Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1166 (S.D.Tex. 1994). Elliott argues that at least twenty-one (21) known witnesses reside in Texas, while Carnival counters that all of its relevant witnesses reside in Miami, Florida. Elliott further argues that, as a Texas resident, a Texas forum is more convenient for him. These allegations, without more, do not overcome the presumption created by the forum-selection clause that Florida is more convenient. *Cf. Walker v. Carnival Cruise Lines,* 107 F.Supp.2d 1135, 1140–41 (N.D.Cal.2000) (finding that the plaintiffs' particularly severe physical impairments transformed Florida into a "remote alien forum" even though "others might undertake a journey [from California to Florida] with relative ease"). Thus, this factor weighs heavily in favor of transfer.

### b. Location of Counsel

Although both Parties have retained counsel in the Southern District of Texas, this fact disfavors transfer only slightly. *See Dupre,* 810 F.Supp. at 826 (recognizing that the vast majority of cases afford the location of counsel little or no consideration).

### c. Location of Books and Records

Carnival alleges that its documents and records are located in Miami, where it maintains its principal place of business. But, as Elliott points out, these documents can be produced and examined anywhere for discovery purposes. *SMI–Owen Steel Co. v. St. Paul Fire & Marine Ins. Co.,* 113 F.Supp.2d 1101, 1106 (S.D.Tex.2000) (Kent, J.). Thus, the Court considers this factor to be neutral.

### d. Costs of Trial

Elliott asserts that transferring the case to Florida would not reduce costs, but would simply shift costs from Carnival to Elliott. Generally, this argument would carry great weight. But where, as here, Elliott accepted a contract specifying litigation in Florida, his cost-shifting argument is not as compelling as it would normally be. Thus, this factor does not weigh in favor of retaining the case.

### e. Location of the Alleged Wrong

The alleged wrong occurred neither in Texas nor in Florida, but in the waters off the coast of, and between the ports of, Texas and Mexico. As Elliott notes, the *Celebration* sails into the waters of Galveston on a regular basis and carries passengers who are more likely residents of the Southern District of Texas than of the Southern District of Florida. Generally, these facts would favor retention, but again they cannot overcome the presumption created by the forum-selection clause, especially in light of the Supreme Court's justification for forum-selection clauses in form passage contracts. *See Carnival,* 499 U.S. at 593, 111 S.Ct. at 1527 (asserting that reasonable forum-selection clauses are permissible in form passage contracts because, without them, a cruise line could be subject to suit in many different fora).

*f.* *Possibility of Delay and Plaintiff's Choice of Forum*

Although Elliott's decision to file in this Court speaks to his present forum preference, the Court cannot ignore the agreement in the Passenger Ticket Contract expressing a preference for a different forum. Though Elliott argues he was not aware of the clause, he received the ticket with ample time to examine its contents and is held to have been on notice of and to have accepted its contents. *See, e.g., Schaff,* 999 F.Supp. at 926–27. Additionally, the Court notes that this case was filed very recently, in July of 2002, and has not yet received a trial setting. Thus, any delay caused by transfer will be minimal.

In sum, the Court finds that Elliott has not presented sufficient evidence to override the presumption created by the forum-selection clause that trial would be more convenient in Florida. Carnival has satisfied its burden of demonstrating to this Court that transfer is warranted to serve the interests of justice and for the convenience of all involved.

### III. Conclusion

For all of the reasons set forth above, the Court hereby DENIES Defendants' Motion to Dismiss Under Fed.R.Civ.P. 12(b)(3); GRANTS Defendants' Motion to Transfer Venue; and TRANSFERS this action to the United States District Court for the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1404. The Court DENIES AS MOOT Plaintiff's Motion for Leave to Conduct Discovery and to Enlarge Time Regarding Defendants' Motion to Dismiss or, Alternatively, to Transfer, and the Court DOES NOT REACH Plaintiff's Request for Class Certification and Defendants' Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6). These, and any other unresolved issues, are respectfully deferred to the consideration of the transferee court. Each Party is to bear its own taxable costs and expenses incurred herein to date.

IT IS SO ORDERED.