# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 99-11378

---

GLENN K. JACKSON; ELSIE JACKSON,

Plaintiffs-Appellants,

versus

WEST TELEMARKETING CORPORATION
OUTBOUND, A Delaware Corporation; DOES
1-10, inclusive; WEST TELEMARKETING
CORPORATION, A Delaware Corporation;
STEVEN GARZA; PROVIDENCE COMMERCIAL
REAL ESTATE SERVICES, INC.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Texas

---

April 4, 2001

Before POLITZ, SMITH, and PARKER, Circuit Judges.

POLITZ, Circuit Judge:

Glenn and Elsie Jackson appeal an adverse summary judgment in their action

alleging bid-rigging through fraud, conspiracy, and misappropriation. Concluding

that the statute of limitations bars their tort claims and that they presented no genuine issues of material fact pertaining to the claim for fraud, we affirm.

## BACKGROUND

The Jacksons, residents of California, desired to purchase office buildings in San Antonio, Texas, known as Woodway Phase I and Phase IV.  Old Stone Federal Savings Bank foreclosed on the properties in 1992.  The Resolution Trust Corporation, as receiver for Old Stone, owned  a 69.23% interest therein. Broadway National Bank of San Antonio owned the remaining 30.77%, which it sold to the Jacksons for $680,000, subject to Old Stone's right of first refusal.  After obtaining financing from Broadway, the Jacksons offered $1.5 million to Old Stone for its interest in Phase IV.  This bid was increased to $1,592, 290 – 69.23% of the $2.3 million asking price.  An Old Stone employee handled the sales process.

West Telemarketing Corporation, a Delaware corporation with its principal place of business in Nebraska, also expressed an interest in Phase IV, appointing an agent to assist in its purchase efforts.  The Old Stone employee handling the sale informed West's agent that a $2.3 million dollar bid "would not be eliminated because of price."  The very next day, after the Jacksons refused an offer by West to purchase the interest acquired from Broadway, West submitted a bid for $2.5

million, with brokerage fees to be paid by West.[1]  The Old Stone employee recommended the offer to the RTC, Broadway, and Jackson.  In accord with the Participation Agreement between Old Stone and Broadway, all parties consented and the sale was finalized on September 23, 1993.

Similar events transpired the following year when Old Stone sold Phase I. The RTC wrote to the parties asking them to submit their "best and final offers." On the morning of the deadline, West offered to purchase Phase I for $2.9 million. The Jacksons bid $3.1 million.  West's agent called to inquire "how our offer looked," and the Old Stone employee responded by giving the agent "some range of numbers that the [other] offers fell within."  West's agent sent a revised offer for $3.2 million.  The RTC accepted West's bid and the parties entered into a purchase agreement on February 5, 1995.

In August of 1997, the Jacksons filed suit in California state court alleging various types of unfair competition, fraud and deceit, tortious interference with contract, misappropriation, and conversion.  Appellees removed to federal court based on diversity jurisdiction and then successfully moved to transfer the case to Texas urging lack of personal jurisdiction, improper venue, or, in the alternative, for

---

[1]  The Jacksons assert that this was the first time West included brokerage fees in its offer, and that it did so only after its agent learned of similar terms in their offer.

convenience of the parties.  The appealed motion for summary judgment was then

filed and was granted by the Magistrate Judge.  This appeal followed.

## ANALYSIS

We review *de novo* a trial court's grant of summary judgment.[2]  The Jacksons

challenge the court *à quo*'s use of the Texas choice of law rules and the subsequent

application of Texas substantive law.   Also challenged is the entry of summary

judgment both with respect to the statute of limitations on the tort claims and the

lack of evidence of fraud.

I.      **Applicable Law**

A.      <u>Choice of Law Rules</u>

The Jacksons first  contend that the trial court erred in applying Texas' choice

of law rules.  In determining the appropriate substantive law, the court looked to the

Texas choice of law rules because a federal court exercising diversity jurisdiction

typically applies the choice of law rules of the forum state.[3]  The instant action is a

bit more complex, however, because of the transfer from California, the "original"

forum state.  The Jacksons assert that the California district court transferred the

---

[2]  <u>Threadgill v. Prudential Securities Group, Inc.</u>, 145 F.3d 286 (5th Cir.1998).

[3]  <u>Klaxon Co. v. Stentor Electric Manufacturing Co.</u>, 313 U.S. 487 (1941).

4

matter under 28 U.S.C. § 1404(a) and that such transfers do not change the state law applicable to a diversity case.[4] West counters that the court issued the transfer under § 1406(a) because venue was improper in California.[5]

The federal court in California ordered the transfer "because of the forum selection clause in the parties' agreement."[6] We recognize that in <u>Stewart Organization, Inc. v. Ricoh Corp.</u>,[7] the Supreme Court questioned "whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case to a Manhattan court."[8] Answering that inquiry in the affirmative, they stated that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"[9] On close

---

[4] <u>See</u> <u>Ferens v. John Deere Co.</u>, 494 U.S. 516 (1990).

[5] <u>See</u> <u>Tel-Phonic Services, Inc. v. TBS Int'l, Inc.</u>, 975 F.2d 1134 (5th Cir. 1993) (holding that transfers for improper venue pursuant to § 1406(a) require that the transferee court apply the law of the transferee state).

[6] West's motion requesting the transfer referenced the forum-selection clause in the purchase agreement for Phase IV. Section 9.4 of the Phase IV Agreement provided: "In any proceeding involving the transaction contemplated by this Contract, the venue for such proceeding shall be Dallas County, Texas."

[7] 487 U.S. 22 (1988).

[8] <u>Id.</u> at 29.

[9] <u>Id.</u> (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964)). The court also noted that "[a] motion to transfer under § 1404(a) thus calls on the district court to weigh

review we conclude that the <u>Stewart</u> case does not control the present dispute for three reasons.

Initially, while the Jacksons urged application of California law to the Texas district court, they never disputed West's assertions that the Texas choice of law rules applied. Had they urged that California choice of law rules were applicable because the California court transferred under § 1404(a), the Texas district court quite likely would have underscored the reasons for the transfer. Their assertion, for the first time advanced on appeal, that <u>Stewart</u> requires application of California law because of a claimed transfer under § 1404(a) is not persuasive.

In addition, <u>Stewart</u> discusses the devices a trial court may employ to transfer an action when one party urges same based on a forum selection clause. The Court found that § 1404(a) is <u>an</u> appropriate vehicle for such a transfer because it allows for an individualized assessment of fairness and convenience, with a forum selection clause being <u>one</u> factor for consideration. <u>Stewart</u> does not mandate that whenever a forum selection clause exists any transfer must fall under § 1404(a).

Finally, although the transfer order referenced neither § 1404(a) nor §

_____

in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." <u>Id.</u>.

1406(a), the record provides valuable insight into the statutory basis for transfer. West's motion requested dismissal or transfer under § 1406(a), or, in the alternative, transfer under § 1404(a) for the convenience of the parties. West's memorandum in support of a transfer under § 1406(a) focuses exclusively on the forum selection clause, asserting that by designating Texas as the forum, venue in California was improper. In contrast, when requesting transfer under § 1404(a), West presented a detailed analysis of the traditional factors evaluated when considering a transfer for convenience. Nothing in the record indicates that the court transferred the case for "convenience and fairness," which would implicate the reasoning and holding in Stewart. To the contrary, by stating only that the transfer was based on "the forum selection clause" the court obviously accepted West's contentions that venue in California was improper.[10] As we held in Tel-Phonic Services, Inc. v. TBS Int'l, Inc.,[11] a transfer for improper venue comes under § 1406(a).

Having determined that the California court transferred the case under § 1406(a), we conclude that the Magistrate Judge correctly applied Texas choice of

---

[10] We note that the Jackson memorandum in opposition only attacked the validity of the forum selection clause. Jackson alleged fraud in the procurement of the Purchase Agreement, including the forum selection clause, but never provided the district court with any affirmative reasons justifying venue in California.

[11] 975 F.2d 1134 (5th Cir. 1992).

7

law principles. In <u>Ellis v. Great Southwestern Corp.</u>,[12] we addressed the choice of law principles applicable to transfers based on § 1404(a) and § 1406(a) and opined: "Accordingly, we conclude, as have the majority of authorities that have considered this question, that following a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court."[13]

B.    <u>Substantive Law</u>

The Jacksons also challenge the application of Texas rather than California substantive law. We find no error in the trial court's analysis of Texas choice of law rules. Texas adheres to the most significant relationship test for both contract and tort cases.[14] Although the number of contacts is relevant, the qualitative nature of the contacts controls.[15] The real property at issue herein is in San Antonio, Texas. West's principal place of business is in Texas. The parties executed the contracts for sale in Texas and included a choice of law provision requiring application of Texas law. The only contact with California is that the Jacksons reside there.

---

[12]  646 F.2d 1099 (5th Cir. 1981).

[13]  <u>Id.</u> at 1109.

[14]  <u>See</u> <u>Mitchell v. Lone Star Ammunition, Inc.</u>, 913 F.2d 242 (5th Cir. 1990).

[15]  <u>Id.</u> at 249 (citing <u>Gutierrez v. Collins</u>, 583 S.W.2d 312, 319 (Tex. 1979)).

Virtually all of the relevant conduct occurred in Texas which undeniably bears the most significant relationship to the subject matter. There is no error in the Magistrate Judge's application of Texas law.

## II. Statute of Limitations

The trial court found that the statute of limitations barred the tort claims, even if the discovery rule extended the time for the filing thereof. We find no error in the findings and the subsequent entry of summary judgment on this issue.

Under Texas law, claims for unfair competition, unfair trade practices, conversion, tortious interference with contract, misappropriation of trade secrets, and conspiracy must be brought within two years from the time the cause of action accrues.[16] In general, a cause of action accrues and limitations begin running when a wrongful act causes a legal injury.[17] The discovery rule, however, "defers accrual of certain causes of action until the plaintiff knew, or exercising reasonable

---

[16] See TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp. 1999)(conversion); TEX. BUS. & COMM. CODE ANN. § 17.565 (Vernon 1997) (unfair trade practices under Texas law); Computer Associates Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996) (applying two-year statute of limitations in § 16.003(a) to misappropriation of trade secrets); First Nat'l Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289 (Tex. 1986) (unfair competition and tortious interference with contract); Nelson v. American Bank of Gonzales, 921 S.W.2d 411, 415 (Tex. App. 1996) (applying two-year statute of limitations in § 16.003 to claims for civil conspiracy).

[17] S.V. v. R.V., 933 S.W.2d 1 (Tex.1996).

diligence, should have known of the wrongful act causing injury."[18]  The discovery

rule affords protection in only limited instances,[19] applying in (1) cases of fraudulent

concealment; and (2) when the nature of the injury is inherently undiscoverable and

the injury itself is objectively verifiable.[20]

Appellees successfully met their summary judgment burden by establishing

that the applicable statute of limitations bars each of the asserted tort claims.  These

claims revolve around the assertion that appellees misappropriated confidential

information allowing West to out-bid Jackson unfairly for the Phase I and Phase IV

properties.  As in the Findings and Recommendation of the Magistrate Judge, we

assume *arguendo* that the discovery rule applies to the facts at issue.  Accordingly,

the two-year statute of limitation began running when Jackson knew, or exercising

reasonable diligence should have known of defendants alleged unlawful obtaining of

confidential information.

Glenn Jackson acknowledges that after Old Stone rejected his Phase I bid he

contacted the RTC to express concerns over whether his bid had received fair

---

[18]  Salinas v. Gary Pools, Inc., 31 S.W.3d 333, 335 (Tex. App. 2000) (citing Advent Trust Co. v. Hyder, 12 S.W.3d 534, 538 (Tex.App.-San Antonio 1999, pet. denied)).

[19]  HECI Exploration Co. v. Neel, 982 S.W.2d 881(Tex. 1998).

[20]  S.V., 933 S.W.2d at 6 (citing Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex.1996)).

treatment.  He also submitted a Freedom of Information Act request on January 6, 1995, asking about West's bids, the contracted purchase price, and the terms and conditions thereof.  The RTC refused this request[21] but informed Jackson that he could obtain information on closed asset sales from the Dallas Field Office Public Service Center.  Jackson appealed to the RTC's General Counsel on March 8, 1995, and also included a demand for information on the Phase IV property, noting that the sale on that building already had closed.

It should be manifest that by March of 1995, Glenn Jackson suspected the unlawful behavior underlying their present claims.  They now maintain that their suspicions related only to the treatment of their bid by the RTC, not any wrongdoing by West.  We are not persuaded.  The Jackson letters and requests regarding both the Phase I and Phase IV projects reflect knowledge of sufficient facts to cause a reasonably prudent person to investigate further, thereby discovering any cause of action against West.  We therefore affirm the entry of summary judgment with respect to the Jacksons' tort claims.

III.    **Fraud Claim**

The Jacksons also challenge the grant of summary judgment with respect to

---

[21]  Under the FOIA, federal agencies may withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).

their claim for fraud. The trial court found a lack of sufficient evidence to proceed with this fraud action. In order to prove fraud, the Jacksons must establish: (1) a material misrepresentation; (2) that was false; (3) known to be false when made or asserted without knowledge of its truth; (4) made with intent that they would act on it; (5) that they actually did rely on it; and (6) that it caused injury.[22] This claim rests on concealment rather than on affirmative statements. "Absent a fiduciary or confidential relationship, the failure to disclose information is not actionable as fraud."[23]

The Jacksons did not establish a genuine issue of material fact with respect to the claim for fraud. Any alleged fiduciary duty owed to them by Old Stone extends to its own conduct but does not encompass any acts of West, the party named in the Jacksons' action. As noted by the trial judge, the duty of good faith and fair dealing does not impose upon one party the burden of placing the interests of the other party ahead of their own, as would be the case in a fiduciary relationship.[24] The Jacksons

---

[22] Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41 (Tex. 1998) (quoting Sears Roebuck & Co. v. Meadows, 877 S.W.2d 281 (Tex. 1994)).

[23] See Mitchell Energy Corp. v. Samson Resources Co., 80 F.3d 976, 985 (5th Cir. 1996) (citing Tempo Tamers, Inc. v. Crow-Houston Four, Ltd., 715 S.W.2d 658, 669 (Tex.App. – Dallas 1986, writ ref'd n.r.e.)).

[24] Crim Truck & Tractor Co. v. Navistar Int'l Transportation Corp., 823 S.W.2d 591, 594 (Tex. 1992).

12

sued West, not RTC or Old Stone. Nothing in the record before us provides any justification for imposing upon West a fiduciary duty to disclose its dealings with Old Stone. No genuine issue of fact exists regarding the fraud claim and summary judgment thereon was appropriate.

The judgment appealed is AFFIRMED.