United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-11052
Summary Calendar

DELTA BRANDS INC

Plaintiff - Appellant

v.

DANIELI CORPORATION; DANIELI & C SPA; SSAB TUNNPLAT AB

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
No. 3:02-CV-81-N

Before KING, Chief Judge, and DeMOSS and STEWART, Circuit Judges.

PER CURIAM:[*]

Delta Brands, Inc. ("Delta"), a Texas Corporation, brought suit against SSAB Tunnplåt AB ("SSAB"), a Swedish Corporation, Danieli Corporation ("Danieli Corp."), a Delaware Corporation, and Danieli & C Officine Meccaniche SpA ("Danieli & C"), an Italian Corporation. The three defendants sought dismissal on various grounds. After finding that Delta had failed to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

establish a prima facie case of personal jurisdiction over SSAB or Danieli Corp., the district court granted their motions to dismiss. The district court granted Danieli & C's motion to dismiss on the basis of forum non conveniens, upon determining that the relevant private and public interests favored Italy, rather than Texas, as the appropriate forum. Delta appeals the district court's dismissal of its claims against SSAB, Danieli & C, and Danieli Corp. We affirm.

## I.  BACKGROUND

Delta, a Texas corporation that designs and manufactures steel-processing equipment, contacted SSAB, a sheet-steel manufacturer based in Sweden, in an effort to market its product to SSAB. Fortuitously, at that time, SSAB was soliciting bids for two cut-to-length lines.[1] SSAB invited Delta to submit a bid, and Delta complied by sending a bid and layout drawings to SSAB. Five companies besides Delta responded to SSAB's bid request, including Danieli & C, an Italian company.

At SSAB's invitation, Delta flew to Sweden to discuss its bid. During its meeting with Delta in Sweden, SSAB expressed an interest in viewing Delta's equipment in operation. Once Delta's representatives returned to the United States, SSAB again requested to view Delta's equipment. The parties agreed that

---

[1]  Cut-to-length lines perform a variety of functions including uncoiling coils of steel, leveling the steel, cutting the steel to a specific length, and stacking the cut pieces.

2

SSAB would visit the United States. SSAB thus flew to the United States, inspected Delta's equipment in Tennessee and Indiana, and met with Delta representatives at Delta's headquarters in Irving, Texas. Throughout the trip, SSAB praised Delta's technology.

Danieli Corp.,[2] the North American representative of Danieli & C,[3] telephoned Delta to inquire about the possibility of having Delta work as a subcontractor for Danieli & C on the SSAB project. Employees at Danieli Corp. and Delta exchanged several phone calls and emails on this subject, but Danieli & C and Delta ultimately decided to pursue separate bids.

SSAB subsequently invited Delta, Danieli & C, and one other company back to Sweden for final bidding and negotiations. After completion of these meetings, SSAB informed Delta that it had not been chosen for the project. Delta telephoned SSAB to inquire who had been chosen; SSAB replied that Danieli & C was to provide its cut-to-length lines. During this call, SSAB told Delta that it had asked Danieli & C to provide a rotary shear like Delta's.

At SSAB's suggestion, Delta contacted Danieli & C, through Danieli Corp., about possibly subcontracting on SSAB's project. According to Delta, Danieli Corp. opened a dialogue between Delta

---

[2] Danieli Corp. is organized under the laws of Delaware and its principal place of business is in Cranberry Township, Pennsylvania.

[3] Danieli Corp. is wholly owned by Danieli Holdings, Inc., which, in turn, is wholly owned by Industrielle Betellingung SA, which, in turn, is 90% owned by Danieli & C.

and Danieli & C. Danieli Corp. also forwarded technical information from Delta to Danieli & C. These discussions culminated in Delta submitting an offer to Danieli & C. When Danieli & C did not immediately respond to the offer, Delta contacted Danieli & C to check the status of its bid.

Danieli & C telephoned Delta in Texas and asked Delta to send a delegation to Buttrio, Italy to finalize the agreement. Delta's representatives thus traveled to Italy. In Italy, Danieli & C executed a confidentiality agreement with Delta and was provided with confidential documents regarding Delta's rotary shear and its electromagnetic stacker. Danieli & C, however, declined to finalized the subcontracting agreement while Delta was in Italy; Danieli & C told Delta that the agreement would be finalized upon Delta's return to Texas.

Delta's representatives returned to Texas, but Delta was not contacted by Danieli & C as planned. Delta telephoned Danieli & C repeatedly to check on the status of its bid. Danieli & C eventually emailed Delta that its price was too high. When Delta telephoned Danieli & C, Danieli & C warned that if Delta would not provide its rotary shear and its electromagnetic stacker at a lower price, then Danieli & C would have them manufactured by someone else.

Delta brought suit against Danieli & C and Danieli Corp. in federal district court in Texas, alleging that the companies had both breached their confidentiality agreement with Delta and

4

misappropriated Delta's trade secrets. Delta later amended its complaint to add causes of action for fraud, conspiracy, and negligent misrepresentation, and to include SSAB as a defendant. Upon various motions by the defendants, the district court dismissed Delta's suit against Danieli & C under the doctrine of forum non conveniens, dismissed Delta's suit against SSAB for lack of personal jurisdiction, and ordered Delta to amend its complaint to state its allegations against Danieli Corp. more specifically. Delta's Second Amended Complaint alleges that Danieli Corp. conspired with Danieli & C to misappropriate Delta's trade secrets by misrepresenting Danieli & C's intent to use Delta as a subcontractor and then breaching its confidentiality agreement with Delta. After Delta submitted its Second Amended Complaint, Danieli Corp. moved to dismiss for lack of personal jurisdiction. The district court granted Danieli Corp.'s motion and entered a final judgment against Delta. Delta timely appeals the dismissal of its claims against SSAB, Danieli & C, and Danieli Corp.

## II.   PERSONAL JURISDICTION

We review a district court's decision to dismiss for lack of personal jurisdiction de novo. <u>Stripling v. Jordan Prod. Co.</u>, 234 F.3d 863, 869 (5th Cir. 2000). Where, as here, the district court did not conduct an evidentiary hearing, the party seeking to assert personal jurisdiction is required only to present

sufficient facts to make out a prima facie case. Id. The court will accept as true any uncontroverted allegations contained the party's complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction. Id. The court need not, however, accept "merely conclusory" allegations as true. Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 380 (5th Cir. 2003).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the state long-arm statue permits an exercise of jurisdiction and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. Religious Tech. Ctr. v. Liebreich, 339 F.3d 369, 373 (5th Cir. 2003); see also FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry in this case is whether the district court's exercise of personal jurisdiction over the defendants would be consistent with due process. Religious Tech Ctr., 339 F.3d at 373.

The exercise of jurisdiction over a nonresident defendant is proper, under the Due Process Clause, when two requirements have been met: (1) the defendant has established "minimum contacts" with the forum state and (2) exercising jurisdiction does not offend "traditional notions of fair play and substantial

6

justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 214-15 (5th Cir. 2000).  A defendant has minimum contacts with a forum if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  The minimum-contacts requirement ensures that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson,  444 U.S. 286, 297 (1980).

Personal jurisdiction may be specific or general.  A court may exercise specific personal jurisdiction over a defendant if the suit arises out of or is related to the defendant's purposeful contacts with the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Alpine View Co., 205 F.3d at 215.  By contrast, if a suit is unrelated to the defendant's activities in the forum, a court may exercise general personal jurisdiction over the defendant if the defendant's contacts with the forum state are substantial and "continuous and systematic."  Helicopteros, 466 U.S. at 414-15; Alpine View Co., 205 F.3d at 215.

With these general principles in mind, we now consider whether the district court properly found that it did not have personal jurisdiction over either SSAB or Danieli Corp.

7

**1. SSAB**

SSAB is organized under the laws of Sweden. SSAB's principal place of business is Borlänge, Sweden; it has no subsidiaries or branch offices in the United States. SSAB does not have employees, servants, or agents in Texas, nor does it own or lease any property in Texas. Nonetheless, Delta contends that SSAB's contacts with Texas are sufficient to support general personal jurisdiction because (1) SSAB Swedish Steel ("Swedish Steel"), which is wholly owned by SSAB's parent corporation, SSAB Svenskt Stal AB, maintains a Pittsburgh office and sells products in Texas; (2) one of Swedish Steel's employees resides in Texas; (3) 0.04% of SSAB's steel products were shipped by third parties into Texas; and (4) SSAB's representatives visited Delta's Texas facility on one occasion. We agree with the district court that these contacts are insufficient to give rise to general personal jurisdiction over SSAB.

As noted by the district court, Swedish Steel's contacts with Texas may not be imputed to SSAB because the evidence demonstrates that SSAB and Swedish Steel, though owned by the same parent corporation, are separate and distinct entities. See Alpine View Co., 205 F.3d at 218-19; Bearry v. Beech Aircraft Corp., 818 F.2d 370, 372-73 (5th Cir. 1987). Furthermore, that a small portion of SSAB's products were shipped by third parties into Texas does not establish that SSAB availed itself of the

benefits and protections of Texas law.  See Bearry, 818 F.2d at 373, 375-76 (holding that "[t]he laws of Texas neither protected nor benefitted" the defendant even though nearly $250 million of the defendant's manufactured products flowed to independent dealers in Texas over a five-year period).  Finally, SSAB's lone trip to Texas for the purpose of visiting Delta's headquarters is not a substantial contact and certainly does not constitute "continuous and systematic" contacts with Texas.  In sum, the flow of SSAB's goods into Texas through third parties, combined with one visit by SSAB to Delta's Texas facility, are insufficient contacts with Texas to give rise to general personal jurisdiction.

Delta also contends, however, that SSAB has contacts with Texas that support specific personal jurisdiction because (1) SSAB made misrepresentations to Delta, some of these misrepresentations were made in Texas, and it was foreseeable that the effects of SSAB's misrepresentations would be felt by Delta in Texas and (2) SSAB was part of a conspiracy to acquire and to misappropriate Delta's confidential information.

Delta correctly notes that this court has held that tortious actions performed outside of Texas may be sufficient, for purposes of minimum-contacts analysis, if the actions "had foreseeable effects in the forum and were directed at the forum." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir.

9

1999).  But Delta has not shown that SSAB directed its actions at Texas.  Rather, the evidence shows that Delta sought out SSAB's business, first by telephoning SSAB in Sweden, and then by traveling to Sweden to meet with SSAB representatives.  In fact, SSAB ultimately declined to create an ongoing business relationship with Delta, opting instead to do business with Danieli & C, an Italian Corporation.  Contact initiated by Delta is insufficient to show that SSAB purposefully directed its actions at Texas.  Hanson, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Furthermore, Delta has not alleged that SSAB made misrepresentations to Delta while SSAB was in Texas; nor has Delta alleged that SSAB made misrepresentations in telephone calls, faxes, or emails to Delta personnel in Texas.[4]  Cf. Wien Air Alaska, Inc., 195 F.3d at 212 (holding that the defendants had purposefully directed their actions at Texas by making fraudulent misrepresentations to the plaintiff in telephone calls

_____

[4] SSAB did allegedly comment, during a phone call with a Delta employee in Texas, that "the rotary shear and temper mill in [Delta's] material were very novel and interesting," but, presumably, Delta does not consider this to be a false statement. In any case, this statement cannot form the basis for a fraudulent-misrepresentation claim, because, under Texas law, statements of opinion or judgment do not ordinarily support claims of fraud.  Fina Supply, Inc. v. Abilene Nat'l Bank, 726 S.W.2d 537, 540 (Tex. 1987); Ryan v. Collins, 496 S.W.2d 205, 210 (Tex. Civ. App.--Tyler 1973, writ ref'd n.r.e.).

10

to the plaintiff in Texas and in letters and faxes sent to the plaintiff in Texas). Thus, Delta has not shown that SSAB purposefully availed itself of the privilege of conducting business within Texas or invoked the benefits and protections of Texas's laws. Consequently, we conclude that Delta has failed to establish a prima facie case of specific personal jurisdiction based on SSAB's alleged misrepresentations. See Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001).

Delta also contends that specific personal jurisdiction can be based on SSAB's alleged participation in a conspiracy to obtain Delta's confidential information. To establish its prima facie case of specific personal jurisdiction, Delta was required to demonstrate that SSAB individually, and not as part of the conspiracy, had minimum contacts with Texas. Guidry v. United States Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999). Thus, Delta was required to show that either the alleged conspiracy or SSAB's alleged misrepresentations were related to or arose out of SSAB's contacts with Texas.

Delta's First Amended Complaint states that "Defendants SSAB and Danieli have conspired together . . . to acquire and misappropriate [Delta]'s confidential and proprietary information" by making material misrepresentations to Delta. In this section of its complaint, however, Delta makes no reference to the state of Texas. Delta has provided no other evidence that

11

the conspiracy was related to SSAB's contacts with Texas. Furthermore, as explained above, there is no evidence that SSAB's alleged misrepresentations were directed at Texas. Therefore, Delta has not established a prima facie case of specific personal jurisdiction over SSAB based on its alleged participation in a conspiracy against Delta.

As Delta has presented neither a prima facie case of general personal jurisdiction nor a prima facie case of specific personal jurisdiction, the district court correctly dismissed Delta's suit against SSAB.

## 2. Danieli Corp.

Delta contends that Danieli Corp. has minimum contacts with Texas based on Danieli Corp.'s breach of Delta's confidentiality agreement, its fraudulent misrepresentations to Delta, and its conspiracy with Danieli & C to acquire Delta's confidential information. We agree with the district court, however, that Delta has not presented a prima facie case of specific personal jurisdiction related to any of these claims.

In its appellate brief, Delta argues that specific personal jurisdiction is proper based on the confidentiality agreement, because, by entering into the agreement, Danieli Corp. "created continuing obligations between it and [Delta], a Texas resident[,] and has availed itself of the privilege of conducting business in Texas." Delta's argument is unpersuasive. As Delta

12

admitted in its Second Amended Complaint, "Danieli [Corp.] and Danieli & C are separate and distinct legal entities." The uncontradicted evidence shows that Danieli Corp. never agreed to be bound by the confidentiality agreement between Delta and Danieli & C. Notwithstanding that Danieli & C promised on behalf of itself and "any other party affiliated with it [to] maintain . . . the strict confidentiality of [Delta's] Confidential Information," only Danieli & C signed the agreement. Danieli Corp. did not know about the confidentiality agreement,[5] let alone agree to be bound by it. It is far-fetched indeed to assert that Danieli Corp. should have anticipated being haled into Texas court in connection with a contract it did not know about, that was executed in Italy by its affiliate, and that was allegedly breached by its affiliate in Italy. Consequently, we hold that Delta has failed to establish a prima facie case of specific personal jurisdiction related to its contract claim against Danieli Corp.

Delta also contends that specific personal jurisdiction exists based on Danieli Corp's fraudulent misrepresentations. In its brief on appeal, Delta argues that Danieli Corp., like SSAB, made misrepresentations to Delta that it knew or should have known would cause harm to Delta in Texas. Delta, however, never

_____

[5]    According to an affidavit submitted by Danieli Corp. and uncontradicted by Delta, Danieli Corp. was unaware of the confidentiality agreement until it received Delta's original complaint in this case.

13

alleged in its Second Amended Complaint that Danieli Corp. actually misrepresented any material facts. Delta merely alleged that misrepresentations were made, but the complaint is ambiguous about who allegedly made them: Danieli & C, Danieli Corp., or both.[6] Since Danieli Corp. and Danieli & C are different corporations, only misrepresentations made by Danieli Corp. itself can be used to measure Danieli Corp.'s contacts with Texas; Danieli & C's contacts cannot be imputed to Danieli Corp. See Alpine View Co., 205 F.3d at 219.

Furthermore, even if we interpreted Delta's complaint as alleging that Danieli Corp. made material representations to Delta and that it was foreseeable to Danieli Corp. that the effects of the misrepresentations would felt by Delta in Texas, we would still find that Delta has not established a prima facie case of jurisdiction over Danieli Corp. As with SSAB, Delta has failed to show that Danieli Corp.'s misrepresentations had any connection to Texas, other than that the effects of the misrepresentations would be felt by Delta there. Critically, Delta has not shown that Danieli Corp. purposefully directed its actions at Texas. See Panda Brandywine Corp., 253 F.3d at 869-70 (holding that the foreseeability of causing injury in Texas is

---

[6] Delta's complaint alleges that, "The unlawful means employed [by Danieli & C and Danieli Corp. to gain access to Delta's confidential information] was the misrepresentation to [Delta] with respect to Danieli & C's intent to utilize [Delta] as a subcontractor." Thus, it is unclear who actually made the misrepresentations.

14

insufficient for specific personal jurisdiction, and that the plaintiff must also show that the defendant purposefully directed its efforts towards the forum state).  Delta has not, for example, alleged that Danieli Corp.'s misrepresentations arose out of contacts initiated by Danieli Corp., rather than contacts initiated by Delta.[7]  Nor has Delta alleged that Danieli Corp.'s misrepresentations occurred in telephone calls, emails, or faxes, to Delta in Texas.  Cf. Wien Air Alaska, Inc., 195 F.3d at 212.  Because there has been no showing that Danieli Corp. purposefully availed itself of the privilege of conducting business within Texas, we find that Delta's allegations do not support a prima facie case of specific personal jurisdiction over Danieli Corp.

Finally, Delta argues that it properly established a prima facie case of specific personal jurisdiction based on Danieli Corp.'s alleged participation in a conspiracy with Danieli & C. In its Second Amended Complaint, Delta alleges that Danieli Corp. conspired with Danieli & C to misappropriate Delta's confidential information and that the "means employed [to accomplish this goal] was the misrepresentation to [Delta] with respect to Danieli & C's intent to utilize [Delta] as a subcontractor [and] the breach of the Confidentiality Agreement."  According to

---

[7]     We note that, after losing the SSAB contract to Danieli & C, Delta initiated contact with Danieli Corp. to inquire about subcontracting.  But, of course, contacts initiated by Delta do not show that Danieli Corp. purposefully availed itself of the privilege of conducting business within Texas.  Hanson, 357 U.S. at 253.

Delta, its allegations of conspiracy were sufficient, under Mandelkorn v. Patrick, 359 F. Supp. 692 (D.D.C. 1973), to establish a prima facie case because Danieli Corp. never denied that it participated in a conspiracy with SSAB and Danieli & C. We note, first, that Mendelkorn, a district court case from the District of Columbia, is not binding authority. Even if we agreed with the analysis contained in Mandelkorn, however, Delta's argument fails because, in his affidavit, Mark Brandon, the President of Danieli Corp., explicitly "denie[d] that [Danieli Corp.] conspired in any way with SSAB . . . and/or Danieli & C to acquire any information from Delta." In any event, as explained above, Delta has failed to show how the alleged conspiracy between the defendants had any connection to the state of Texas.

Because Delta has not established a prima facie case of specific personal jurisdiction over Danieli Corp., the district court correctly dismissed Delta's claims against Danieli Corp. for lack of personal jurisdiction.

## III. FORUM NON CONVENIENS

We review for clear abuse of discretion a district court's decision to dismiss a suit under the doctrine of forum non conveniens. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 835 (5th Cir. 1993). "Where the district court 'has considered all

16

relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" Baumgart, 981 F.2d at 835 (quoting Piper Aircraft, 454 U.S. at 257).

There is a "strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft, 454 U.S. at 254-5. Nonetheless, this presumption may be overcome when an alternate, adequate forum is available and private and public interests "clearly point towards trial in the alternate forum." Id. at 255 & n.22. The relevant private interest factors include:

> the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

Id. at 242 n.6 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The district court should also consider the following public interest factors:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (quoting Gulf Oil Corp., 330 U.S. at 509). Although citizen plaintiffs are given "somewhat more deference" in their choice of forum than foreign plaintiffs, dismissal is still appropriate "if

17

the balance of conveniences suggest that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." Id. at 255 n.23. The defendant bears the burden of showing that dismissal on this basis is warranted. Robinson v. TCI/US W. Cable Communications Inc., 117 F.3d 900, 907 (5th Cir. 1997).

Delta has not challenged the district court's determination that Italy is an available and adequate alternative forum for its suit against Danieli & C. Instead, Delta claims that the district court erred in its evaluation of the public and private interests at stake. Regarding the private interests, Delta argues that it is no easier to access sources of proof in Italy than in Texas and that the cost of obtaining the attendance of willing witnesses would be no higher if the suit were tried in Texas than it would be if the suit were tried in Italy. Furthermore, Delta argues that as important documents are in English, its personnel speaks only English, and the key meetings were conducted in English, a trial in Italy would require extensive translation.

In considering the private interest factors, the district court addressed all of these arguments. Although recognizing that most of Delta's documents and witnesses are located in Texas, the district court concluded that Italy would provide better overall access to sources of proof because most of the information and witnesses necessary for trial are located in

18

Italy and Europe. Furthermore, because it found that almost all of the relevant testimony would be provided by European witnesses, the district court concluded that the cost of obtaining attendance of willing witnesses would be lower if the case were tried in Italy. Finally, the district court determined that language barriers would be more problematic in Texas than in Italy, as more witnesses and documents are located in Italy than in Texas.[8] We find that the district court's analysis of these factors was reasonable.

Delta also contends that the district court erred in finding that the existing public interests weighed against trial in Texas. First, Delta claims that this is a localized controversy and, thus, that Texas has an interest in having the case heard in its courts. Second, Delta argues that Texas law applies to the dispute and, therefore, that courts in Texas will be most familiar with the law to be applied. Third, because the law of Texas applies, according to Delta, there would be no problems of conflict of laws or the application of foreign law if the case were tried in Texas.

The district court disagreed with Delta's analysis of the public interests present in this suit. The district court found

---

[8] Certain factors, according to the district court, did not weigh in favor of dismissal. Specifically, the district court found that Danieli & C had not shown that witnesses would be unavailable if the case were tried in Texas or that the viewing of premises in Italy would be necessary.

that this is fundamentally an Italian dispute, rather than a Texas dispute, because the presentation and negotiations of the confidentiality agreement were conducted during Delta's trip to Italy, the confidentiality agreement was executed there, and Danieli & C's alleged breach of the agreement occurred there. According to the district court, even though Texas has an interest in hearing a case brought by one of its citizens, Italy has a stronger interest in having the case heard in Italy because of its interest in regulating corporations that operate within its boundaries. Furthermore, the court concluded that, under a "most significant contacts" analysis, Italian law would apply; thus, Italian courts would be most at home with the law and trying the case in Italy would avoid unnecessary problems in the application of foreign law. Finally, the district court concluded that it would be unfair to burden Texas citizens with jury duty, since this is basically an Italian dispute.[9]

We find no clear abuse of discretion in the district court's analysis of the public interest factors. Specifically, we hold that the district court did not err in concluding that Italian law, rather than Texas law, applies to the dispute. Since this diversity case comes to us from a district court in Texas, we apply Texas choice-of-law rules. Klaxon Co. v. Stentor Elec.

_____

[9] Because neither Danieli & C nor Delta addressed the administrative difficulties flowing from court congestion, the district court did not include this factor in its analysis.

20

<u>Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Texas follows the "most significant relationship" test for contract cases. <u>Jackson v. W. Telemktg. Corp. Outbound</u>, 245 F.3d 518, 523 (5th Cir. 2001). Under this test, the court looks at the quality, rather than the quantity, of the parties' contacts with a particular jurisdiction. <u>Id.</u> Because Danieli & C is domiciled in Italy and the confidentiality agreement between Delta and Danieli & C was negotiated, executed, and allegedly breached in Italy, we find that the district court was correct in holding that Italian law applies. <u>See</u> <u>Maxus Exploration Co. v. Moran Bros., Inc.</u>, 817 S.W.2d 50, 53-54 (Tex. 1991) (outlining the factors that a court should consider in determining which jurisdiction has the most significant relationship to the parties and the transaction).

Because the district court carefully considered the relevant private and public factors, and its analysis was reasonable, we hold that the district court did not abuse its discretion in dismissing the suit against Danieli & C under the doctrine of forum non conveniens.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.