EMPTY BARGE LINES II, INC. and Higman Barge Lines, Inc., Plaintiffs/Counter Defendants,

v.

DREDGE LEONARD FISHER, in rem, and King Fisher Marine Service, Inc., in personam, Defendants,

King Fisher Marine Service, Inc., in personam, Third–Party Plaintiff/Counter Claimant,

v.

M/V TEXIAN, in rem, Tank Barge HTCO 3009, in rem, and Tank Barge HTCO 3010, in rem, Third–Party Defendants.

No. CIV. 1:06–CV–075.

United States District Court,
E.D. Texas,
Beaumont Division.

July 3, 2006.

Mark A. Freeman and David Earl James of Stevens, Baldo and Freeman, Beaumont, TX, for Plaintiffs.

Kevin Troy Dossett of Chamberlain, Hrdlicka White Williams & Martin, Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court are Defendant King Fisher Marine Service, L.P.'s (incorrectly named as "King Fisher Marine Service, Inc.") ("KFMS") Motion to Transfer Venue (# 5) and Supplemental Motion to Transfer Venue (# 15). Defendant seeks a transfer of venue under 28 U.S.C. § 1404(a) from the United States District Court for the Eastern District of Texas, Beaumont Division, to the United States District Court for the Southern District of Texas, Victoria Division, or, alternatively, a transfer to the Corpus Christi Division of the Southern District of Texas. Having reviewed the motions, the submissions of the parties, the pleadings and the applicable law, this court is of the opinion that a transfer of venue is warranted.

### I. *Background*

Plaintiff Empty Barge Lines II, Inc. ("Empty Barge"), owner of the towing vessel M/V TEXIAN, is a corporation with its principal place of business located in Houston, Texas. Plaintiff Higman Barge Lines, Inc. ("Higman Barge"), owner of the HTCO 3009 and HTCO 3010, is a corporation with its principal place of business in Houston, Texas. On February 10, 2006, Empty Barge and Higman Barge (collectively referred to as "Plaintiffs") filed suit in this court against Dredge LEONARD FISHER ("LEONARD FISHER"), a vessel with its home port located in Port Lavaca, Texas, and KFMS, a Texas limited partnership with a principal place of business in Port Lavaca, Texas. In their verified original complaint, Plaintiffs assert a variety of negligence claims against KFMS and LEONARD FISHER based on an allision which took place in the Corpus Christi Ship Channel on January 13, 2005. At the time Empty Barge and Higman Barge filed their verified original complaint, the LEONARD FISHER was engaged in navigation within the Beaumont Division of the Eastern District of Texas.

On January 13, 2005, the M/V TEXIAN was traveling outbound in the Corpus Christi Ship Channel with empty tank barges HTCO 3009 and HTCO 3010 in tow. At approximately 10:50 p.m., "the M/V TEXIAN [allegedly] struck the submerged dredge pipeline belonging to the dredge LEONARD FISHER." The allision resulted in damage to the outer hull of the M/V TEXIAN. Following the allision, United States Coast Guard Marine Safety Office ("USCG") personnel from Corpus Christi, Texas, arrived to investigate the incident. A diver from Coastal Diving, a business located in Aransas Pass, Texas, patched the damaged starboard fuel tank before the vessel was transported to the John Bludworth Shipyard, L.L.C. ("the Shipyard") in Corpus Christi, Texas, to be drydocked for repairs. Plaintiffs contend the allision was caused by the negligence and/or fault of Defendants, specifically arguing that LEONARD FISHER's "pipeline was unlit, improperly marked and improperly positioned in a navigable waterway." Plaintiffs also allege that Defendants breached several rules governing maritime activity and that the Pennsylvania Rule applies. Empty Barge and Higman Barge seek relief in excess of $100,000.00 for physical damage to the vessel, loss of use, demurrage, and loss of profits.

In KFMS's original answer, filed March 29, 2006, it admits that the M/V TEXIAN and tow came to rest on the submerged discharge pipeline when the vessel lost power. KFMS, however, denies acting negligently and asserts a counterclaim for salvage and rescue fees. On the same day KFMS filed its answer, it also filed a verified third-party complaint against the M/V TEXIAN, HTCO 3009, and HTCO 3010, requesting a Rule C maritime lien for purposes of recovering a reasonable salvage

fee and award for services performed in salvaging the vessels and rescuing the crew and tow. At the time KFMS filed its verified third-party complaint, the M/V TEXIAN, HTCO 3009, and HTCO 3010 were found within the Eastern District.

On March 29, 2006, KFMS also filed its motion seeking transfer of the case to the Southern District of Texas, Victoria Division. In its Memorandum in Support of Motion to Transfer Venue, filed on April 24, 2006, KFMS requested a transfer to either the Victoria Division or the Corpus Christi Division of the Southern District of Texas. While Plaintiffs oppose Defendant's motion to transfer, they nonetheless request this court, should it find Defendant's motion meritorious, transfer the case to the Corpus Christi Division.

## II. *Analysis*

### A. *General Considerations*

When the selected venue is proper, a motion to transfer venue from one district or division to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004); *Action Indus., Inc. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049, 124 S.Ct. 826, 157 L.Ed.2d 698 (2003); *Gleisner v. Presbyterian Hosp. of Plano, Inc.*, No. Civ. A. 2:05–CV–369, 2005 WL 2455819, at *1 (E.D.Tex. Oct. 5, 2005); *Lajaunie v. L & M Bo–Truc Rental, Inc.*, 261 F.Supp.2d 751, 753 (S.D.Tex.2003); *Seabulk Offshore, Ltd. v. Dyn Marine Servs., Inc.*, 201 F.Supp.2d 751, 754 (S.D.Tex.2002).

Section 1404(a) applies to the transfer of admiralty cases. *See In re McDonnell-*

*Douglas Corp.*, 647 F.2d 515, 516–17 (5th Cir.1981); *Boutte v. Cenac Towing, Inc.*, 346 F.Supp.2d 922, 925 (S.D.Tex.2004); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3817 (2d ed.1986). The purpose of this statute "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense ....' " *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)); *accord DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 593 (N.D.Tex. 2003); *Shoemake v. Union Pac. R.R. Co.*, 233 F.Supp.2d 828, 829 (E.D.Tex.2002). A transfer of venue may be made upon the motion of any party or by the court *sua sponte*. *See Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987) (citing 28 U.S.C. §§ 1404, 1406); *accord Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir.1989); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988); *Republic of Bol. v. Philip Morris Cos.*, 39 F.Supp.2d 1008, 1008–09 (S.D.Tex.1999); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3844 (2d ed.1986).

Under § 1404(a), the movant has the burden of demonstrating that a change of venue is warranted. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966); *Brown v. Petroleum Helicopters, Inc.*, 347 F.Supp.2d 370, 372 (S.D.Tex.2004); *Lajaunie*, 261 F.Supp.2d at 753; *Shoemake*, 233 F.Supp.2d at 829; *Seabulk Offshore, Ltd.*, 201 F.Supp.2d at 754. To prevail, the moving party must show that the balance

of convenience and justice weighs heavily in favor of a transfer of venue. *See Salinas v. O'Reilly Auto., Inc.,* 358 F.Supp.2d 569, 570 (N.D.Tex.2005); *Von Graffenreid v. Craig,* 246 F.Supp.2d 553, 563 (N.D.Tex. 2003); *DataTreasury Corp.,* 243 F.Supp.2d at 593; *Shoemake,* 233 F.Supp.2d at 829; *Mohamed v. Mazda Motor Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2000). "Therefore, when assessing the merits of a § 1404(a) motion, [the] court must determine if a transfer would make it substantially more convenient for the parties to litigate the case." *Gardipee v. Petroleum Helicopters, Inc.,* 49 F.Supp.2d 925, 928 (E.D.Tex.1999) (citing *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1165 (S.D.Tex.1994)).

■ The decision to transfer a pending case is committed to the sound discretion of the district court. *See Van Dusen,* 376 U.S. at 616, 84 S.Ct. 805; *In re Volkswagen AG,* 371 F.3d at 203; *Casarez v. Burlington N./Santa Fe Co.,* 193 F.3d 334, 339 (5th Cir.1999); *Balawajder v. Scott,* 160 F.3d 1066, 1067 (5th Cir.1998), *cert. denied,* 526 U.S. 1157, 119 S.Ct. 2044, 144 L.Ed.2d 212 (1999); *Shoemake,* 233 F.Supp.2d at 829; *LeDoux v. Isle of Capri Casinos, Inc.,* 218 F.Supp.2d 835, 836 (E.D.Tex.2002). "[T]he trial court must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001) (citing *Radio Santa Fe, Inc. v. Sena,* 687 F.Supp. 284, 287 (E.D.Tex.1988)); *accord Shoemake,* 233 F.Supp.2d at 829 (citing *Robertson v. Kiamichi R.R. Co.,* 42 F.Supp.2d 651, 655 (E.D.Tex.1999)). "The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't,* 337 F.3d at 433; *accord In re Volkswagen*

*AG,* 371 F.3d at 203; *Ramos v. Wal–Mart Stores E., Inc.,* Civ. No. 2:05–CV–478, 2006 WL 20780, at *1 (E.D.Tex. Jan. 4, 2006); *Salinas,* 358 F.Supp.2d at 570; *Purdy v. Munden,* 356 F.Supp.2d 658, 659 (E.D.Tex. 2005).

■ In admiralty matters, venue "is broader than districts, not narrower." *Richoux v. R & G Shrimp Co.,* 126 F.Supp.2d 1007, 1009 (S.D.Tex.2000) (citing *Denson v. United States,* 99 F.Supp.2d 792, 793 (S.D.Tex.2000)); *see also In re McDonnell–Douglas Corp.,* 647 F.2d at 516. Thus, while 28 U.S.C. § 1391 typically governs venue in federal civil actions, Rule 82 of the Federal Rules of Civil Procedure ("Rule 82") expressly excludes the application of § 1391 to admiralty and maritime cases brought under Rule 9(h): "An admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action for the purposes of Title 28, U.S.C., §§ 1391–1392." FED. R. CIV. P. 82; *see In re McDonnell–Douglas Corp.,* 647 F.2d at 516; *Barnett v. Kirby Inland Marine, Inc.,* 202 F.Supp.2d 664, 667 (S.D.Tex. 2002); *Richoux,* 126 F.Supp.2d at 1009; *Denson,* 99 F.Supp.2d at 793. Rule 82 has been interpreted to provide that in cases brought under Rule 9(h), venue lies wherever the court has personal jurisdiction over the defendant. *See In re McDonnell–Douglas Corp.,* 647 F.2d at 516; *Boutte,* 346 F.Supp.2d at 924; *Holmes v. Energy Catering Servs., LLC,* 270 F.Supp.2d 882, 885 (S.D.Tex.2003); *Barnett,* 202 F.Supp.2d at 667; *LeBeouf Bros. Towing v. Gencor Indus., Inc.,* No. CIV. A. 00–2828, 2001 WL 12018, at *1 (E.D.La. Jan. 2, 2001); *Richoux,* 126 F.Supp.2d at 1009; *Denson,* 99 F.Supp.2d at 793. Accordingly, a court sitting in admiralty exercises " 'personal jurisdiction over any defendant sued *in personam* whom the court can reach with process.' " *In re McDonnell–Douglas Corp.,* 647 F.2d at 516 (quot-

ing *H & F Barge Co. v. Garber Bros.*, 65 F.R.D. 399, 404 (E.D.La.1974)).

■ Consequently, with respect to the instant action, venue merges with personal jurisdiction in accordance with general admiralty practice, and venue is proper in any court that has personal jurisdiction over Defendant KFMS. *See In re McDonnell–Douglas Corp.*, 647 F.2d at 516; *Denson*, 99 F.Supp.2d at 793. Because KFMS is a Texas limited partnership with a principal place of business in Port Lavaca, has a registered agent located in Port Lavaca to receive service of process, and the incident giving rise to the lawsuit occurred in Corpus Christi, personal jurisdiction over KFMS appears to pose no obstacle to transferring this case to the Southern District of Texas. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477 n. 2, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir.2003), *cert. denied*, 540 U.S. 1111, 124 S.Ct. 1085, 157 L.Ed.2d 899 (2004); *Diamond Offshore Co. v. A & B Builders, Inc.*, 75 F.Supp.2d 673, 674–75 (S.D.Tex.1999).

■ A court has *in rem* jurisdiction for admiralty proceedings if the *res* is present in the district when the suit is filed or during the pendency of the action. *See* FED. R. CIV. P. Rule C (Supplemental Rules for Certain Admiralty & Maritime Claims); *Platoro Ltd. v. Unidentified Remains of a Vessel*, 508 F.2d 1113, 1115 (5th Cir.1975). Accordingly, this court has *in rem* jurisdiction over Defendant LEONARD FISHER because the dredge was located in the Eastern District of Texas at the time the verified original complaint was filed. A court with *in rem* jurisdiction over a defendant can transfer a pending case even if the case could not have been brought originally in the transferee court. *See Continental Grain Co.*, 364 U.S. at 25–27, 80 S.Ct. 1470; *In re Int'l Marine Towing, Inc.*, 617 F.2d 362, 364 (5th Cir.1980);

*Furness Withy (Chartering), Inc., Pan. v. World Energy Sys. Assocs. Inc.*, 523 F.Supp. 510, 513 (N.D.Ga.1981). The Supreme Court has expressly approved the transfer of an *in rem* action to a court where the case could not have been brought originally, finding that "the law of admiralty itself is unconcerned about technical distinctions between in rem and in personam actions for purposes of transferring admiralty actions from one court to a more convenient forum." *Continental Grain Co.*, 364 U.S. at 25, 80 S.Ct. 1470; *see In re Int'l Marine Towing, Inc.*, 617 F.2d at 364.

When, as here, the movant meets this threshold requirement of establishing venue in the transferee court, motions to transfer are adjudicated by a district court through "individualized, case-by-case consideration[s] of convenience and fairness." *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805; *accord Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir.), *cert. denied*, 534 U.S. 972, 122 S.Ct. 394, 151 L.Ed.2d 299 (2001); *Carney v. Ford Motor Co.*, No. Civ. A. 2:05–CV–122, 2005 WL 1993449, at *1 (E.D.Tex. Aug. 17, 2005); *Isbell v. DM Records, Inc.*, No. Civ. A. 3:02–CV–1408–G, 2004 WL 1243153, at *13 (N.D.Tex. June 4, 2004); *Shoemake*, 233 F.Supp.2d at 829–30. "In considering a motion to transfer venue, courts weigh factors relating to (1) the litigants' convenience and (2) the public interest in the fair and efficient administration of justice." *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F.Supp.2d 504, 509 (E.D.Tex.2003); *see also Ramos*, 2006 WL 20780, at *1; *Mohamed*, 90 F.Supp.2d at 771. A motion to transfer venue under § 1404(a) thus calls on the district court to weigh various case-specific factors. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Jackson*, 245 F.3d at 522 n. 9; *Ramos*, 2006 WL 20780, at *1; *Von Graffenreid*, 246 F.Supp.2d at

563. "The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d at 203 (citing *Action Indus., Inc.*, 358 F.3d at 340 (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986))); *Eliserio v. Floydada Hous. Auth.*, 388 F.Supp.2d 774, 776 (S.D.Tex.2005); *Bolt v. Toyota Motor Corp.*, 351 F.Supp.2d 597, 599 (E.D.Tex.2004).

■ Private interest factors, which involve the preferences and conveniences of the parties and witnesses, include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See In re Volkswagen AG*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)); *Action Indus., Inc.*, 358 F.3d at 340 n. 8 (citing *Syndicate 420 at Lloyd's London*, 796 F.2d at 831); *Eliserio*, 388 F.Supp.2d at 776; *Purdy*, 356 F.Supp.2d at 659. The Fifth Circuit has held that "the convenience of counsel," which previously was considered, "is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG*, 371 F.3d at 206 (citing *In re Horseshoe Entm't*, 337 F.3d at 434) ("[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue"); *see Carney*, 2005 WL 1993449, at *1; *Shoemake*, 233 F.Supp.2d at 833–34. Accordingly, the location of Plaintiffs' counsel in Beaumont, Texas, has no bearing on whether this case should remain in this forum.

■ The public interest factors address broader objectives, such as: (1) the local interest in having localized disputes decided at home; (2) the administrative difficulties flowing from court congestion; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *See In re Volkswagen AG*, 371 F.3d at 203 (citing *Reyno*, 454 U.S. at 241 n. 6, 102 S.Ct. 252); *Action Indus., Inc.*, 358 F.3d at 340 n. 8 (citing *Syndicate 420 at Lloyd's London*, 796 F.2d at 831); *Eliserio*, 388 F.Supp.2d at 776; *Salinas*, 358 F.Supp.2d at 570–71; *Purdy*, 356 F.Supp.2d at 659; *Bolt*, 351 F.Supp.2d at 599.

### B. Private Interest Factors

#### 1. The Relative Ease of Access to Sources of Proof

The relative convenience of the witnesses is often recognized as the most important factor to be considered when ruling on a motion under § 1404(a). *See Spiegelberg v. The Collegiate Licensing Co.*, 402 F.Supp.2d 786, 790 (S.D.Tex.2005); *LeDoux*, 218 F.Supp.2d at 837; *Seabulk Offshore, Ltd.*, 201 F.Supp.2d at 755; *Woolf v. Mary Kay, Inc.*, 176 F.Supp.2d 642, 650 (N.D.Tex.2001), *cert. denied*, 544 U.S. 1061, 125 S.Ct. 2530, 161 L.Ed.2d 1112 (2005); *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F.Supp.2d 663, 668 (S.D.Tex.1999). "In terms of witnesses, venue is considered convenient in the district or division where the majority of witnesses are located." *Shoemake*, 233 F.Supp.2d at 832 (citing *Robertson*, 42 F.Supp.2d at 657); *accord Mohamed*, 90 F.Supp.2d at 775.

■ In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *See Shoemake*, 233 F.Supp.2d at 832; *McGinnis v. Eli Lilly & Co.*, 181 F.Supp.2d 684,

687 (S.D.Tex.2002); *Houston Trial Reports, Inc.,* 85 F.Supp.2d at 668; *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1396–97 (S.D.Tex.1992). Indeed, " '[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.' " *Houston Trial Reports, Inc.,* 85 F.Supp.2d at 668 (quoting *LeBouef v. Gulf Operators, Inc.,* 20 F.Supp.2d 1057, 1060 (S.D.Tex. 1998)); *accord Continental Airlines, Inc.,* 805 F.Supp. at 1396; *see also Dupre,* 810 F.Supp. at 825. Moreover, it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis. *See Spiegelberg,* 402 F.Supp.2d at 790–91; *Shoemake,* 233 F.Supp.2d at 832 (citing *State St. Capital Corp. v. Dente,* 855 F.Supp. 192, 198 (S.D.Tex.1994)); *LeDoux,* 218 F.Supp.2d at 837; *Mohamed,* 90 F.Supp.2d at 775. Where the key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance. *See Z–Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.,* 331 F.Supp.2d 567, 573 (E.D.Tex.2004); *Continental Airlines, Inc.,* 805 F.Supp. at 1397. Hence, it is "the location of key, non-party witnesses that dominates." *Mohamed,* 90 F.Supp.2d at 775.

■ "[W]hether transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located." *Id.* (citing *Robertson,* 42 F.Supp.2d at 657); *accord Eliserio,* 388 F.Supp.2d at 777 n. 2 (citing *Dupre,* 810 F.Supp. at 825). "Conclusory allegations are not sufficient—the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Williams v. Southern Towing Co.,*

No. Civ. A. 03–2688, 2004 WL 60314, at *2 (E.D.La. Jan. 8, 2004); *accord Salinas,* 358 F.Supp.2d at 572; *Z–Tel Commc'ns, Inc.,* 331 F.Supp.2d at 574; *Holmes,* 270 F.Supp.2d at 887; *Mohamed,* 90 F.Supp.2d at 775. In determining whether a particular venue is more convenient to witnesses, the court should inquire into the nature and quality of the witnesses' potential testimony with regard to the issues in dispute rather than limit its investigation to a review of which party can produce the longer witness list. *See Isbell,* 2004 WL 1243153, at *14; *Holmes,* 270 F.Supp.2d at 887; *see also Barnett,* 202 F.Supp.2d at 668; *Aquatic Amusement Assocs. Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 57 (N.D.N.Y.1990). Courts have " 'uniformly refused to let applications for transfer become a battle of numbers.' " *Woolf,* 176 F.Supp.2d at 650 (quoting *Dupre,* 810 F.Supp. at 826); *accord Fletcher v. Southern Pac. Transp. Co.,* 648 F.Supp. 1400, 1402 (E.D.Tex.1986).

■ In the instant case, KFMS supplies a list of potential witnesses, all of whom reside outside the Eastern District and within the Southern District of Texas. Most of the witnesses listed by KFMS are crewmembers of LEONARD FISHER, investigators with the USCG, or rescue divers who were called to the accident scene. The key witnesses in this case who are LEONARD FISHER crewmembers include: Captain Jorge Cordova, Leverman John Trevino, Boatman Victoriano Vega, Boatman Arturo Cavazos, Boatman Alberto Cantu, Deckhand Orlando Tamaz, Mate Luis Limas, Boatman Arturo Liman, and Deckhand Sergio Mendiola. These individuals who were aboard the LEONARD FISHER the day of the incident and have knowledge of relevant facts reside in either Port Lavaca, Edinburg, Alamo, San Juan, or McAllen, Texas. Port Lavaca, Texas, lies within the Victoria Division

whereas McAllen, Edinburg, Alamo, and San Juan are all within the McAllen Division. Each of these cities is located within the Southern District of Texas.

In addition to crewmembers of LEONARD FISHER, KFMS also lists potential non-party witnesses. The key, non-party witnesses involved in the case at bar who are members of the USCG are stationed in Corpus Christi, Texas. These individuals may have knowledge of material facts based on their investigation of the alleged allision. Coastal Diving employees, located in Aransas Pass, Texas, are additional, key, non-party witnesses who may provide relevant information in connection with the diving and inspection services they performed after the incident. Having supplied "diver services, docking, shore power, gas freeing, pumping, fuel tank repairs, bow void repairs, steering linkage repairs, deck winch repairs, and spill cleanup services" in connection with the allision, employees of the Shipyard located in Corpus Christi, Texas, may also furnish pertinent information.

While courts generally give less weight to the convenience of party witnesses, whose attendance can be compelled by their employer, the fact remains that no witness has been identified who resides in the Eastern District of Texas. Because venue is considered convenient in the district or division where the majority of witnesses are located and all identified witnesses in this case reside in the Southern District of Texas, the convenience of the witnesses weighs strongly in favor of a transfer.

The distance witnesses would have to travel to the Beaumont Division of the Eastern District of Texas, when compared to the Corpus Christi Division or Victoria Division of the Southern District of Texas, clearly supports a transfer. For the crewmembers, who are key, party witnesses, the distance between their individual residences and the Beaumont courthouse varies from 240 to 450 miles. The distance from the crewmembers' residences to the Victoria courthouse, however, is between 29 to 240 miles, and the distance to the Corpus Christi courthouse from their residences is between 83 to 172 miles.

For USCG personnel stationed in Corpus Christi, the distance between their headquarters and the Beaumont courthouse is approximately 303 miles. On the other hand, the USCG station is only approximately 93 miles away from the Victoria courthouse and only approximately 4 miles away from the Corpus Christi courthouse. USCG personnel are key, non-party witnesses who may testify to the substance of their investigation of the incident as well as the condition of the vessels and the channel immediately after the allision.

Turning to the employees of Coastal Diving, the distance between the Beaumont courthouse and their facility in Aransas Pass, Texas, is approximately 285 miles, whereas, the distance to the Victoria courthouse is approximately 21 miles, and the distance to the courthouse in Corpus Christi is approximately 75 miles. In light of the diving services Coastal Diving employees provided to patch the hull of the M/V TEXIAN, these key, non-party witnesses may have knowledge about the extent of the damage suffered by both the M/V TEXIAN and LEONARD FISHER as well as the condition of the channel immediately following the incident.

As for those individuals working at the Shipyard who provided services following the incident, their office is approximately 95 miles from the Victoria courthouse and approximately 5 miles from the Corpus Christi courthouse, as opposed to approximately 307 miles from the Beaumont courthouse. These key, non-party witnesses may have relevant knowledge about

the damage sustained by the M/V Texian based on the repair and cleanup services they provided after the alleged allision. As the Supreme Court noted in *In re Volkswagen AG:*

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 204–05; *see also Eliserio,* 388 F.Supp.2d at 777.

Overall, the convenience of the parties and witnesses would be served by a transfer of venue. If the case remains in Beaumont, every witness would be required to commute a significant distance to the courthouse and in doing so, be forced to incur transportation, lodging, and meal expenses. In sum, the location of the parties and the witnesses, as well as the nature and quality of the witnesses' anticipated testimony, militate in favor of a transfer to the Corpus Christi Division of the Southern District of Texas.

" 'When considering a motion to transfer venue, the location of books and records is usually given little weight, unless the documents are so voluminous that their transport is a major undertaking.' " *Eliserio,* 388 F.Supp.2d at 776 (quoting *Gonsalez Moreno v. Milk Train, Inc.,* 182 F.Supp.2d 590, 598 (W.D.Tex.2002)). Here, although none of the parties has provided evidence as to the specific location of relevant books and records, the USCG's investigatory materials, the Coastal Diving documents, and the Shipyard's records pertinent to this case presumably remain with their authors and custodians in the Southern District of Texas. None of the parties maintains an office in Beaumont, Texas, and no significant documents or records are located in the Eastern District of Texas. Rather, in this case, Defendant's principal place of business is located in the Victoria Division of the Southern District of Texas, and Plaintiffs' principal places of business lie within the Houston Division of the Southern District of Texas. Accordingly, none of the relevant books and records are likely located in the vicinity of this court. Additionally, any documents that are not already stored in Corpus Christi could be shipped to Corpus Christi just as easily as they could be shipped to Beaumont. *See Shoemake,* 233 F.Supp.2d at 834; *Hanby,* 144 F.Supp.2d at 678. Given that most of the relevant books and records are stored in Corpus Christi, Port Lavaca, or Houston, Texas, transportation of these items to the Corpus Christi courthouse is more convenient and cost effective than transporting them to Beaumont. Hence, because none of the parties, witnesses, or relevant documents are located in this district, the relative ease of access to sources of proof leans strongly in favor of transferring venue to the Southern District of Texas.

2. *Availability of Compulsory Process*

Another factor to be considered is the availability of compulsory process to insure the attendance at trial of unwilling or hostile witnesses. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Eliserio,* 388 F.Supp.2d at 776–77; *Hess v. Gray,* 85 F.R.D. 15, 25 (N.D.Ill.1979); *Morgan v. Illinois Cent. R.R. Co.,* 161 F.Supp. 119, 120 (S.D.Tex.1958). In this instance, compulsory process would be available in the Southern District of Texas for most of the listed witnesses, but not in this forum, as all of the listed witnesses reside outside

this court's 100–mile subpoena range. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii); *see also Eliserio*, 388 F.Supp.2d at 777. While compulsory process may not be needed in this case, the USCG personnel, Coastal Diving employees, and the Shipyard staff, all of whom may be regarded as key, non-party witnesses, are subject to compulsory process for both trial and deposition in the Southern District of Texas, whereas they could not be required to appear in Beaumont, absent special conditions. *See* Fed. R. Civ. P. 45(b)(2), (c)(3); *In re Volks-wagen AG*, 371 F.3d at 205 n. 4. With the likelihood that most, if not all, of the non-party witnesses are residents of the Southern District of Texas, the ability to compel their personal appearance is a significant factor to consider. The Supreme Court has indicated a strong preference for live testimony. "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants." *Gilbert*, 330 U.S. at 511, 67 S.Ct. 839; *accord Hess*, 85 F.R.D. at 25.

Plaintiffs have not indicated that retaining the case in Beaumont is necessary to compel the attendance of any witnesses, and compulsory process presumably would not be needed for the employees of the company. Also, there is no evidence that any of their witnesses would be either unwilling or unable to travel to Corpus Christi or Victoria for trial. *See Eliserio*, 388 F.Supp.2d at 777; *Isbell*, 2004 WL 1243153, at *14. Accordingly, this factor suggests that a trial in Corpus Christi or Victoria would be preferable and weighs in favor of transfer.

3. *Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses*

As discussed above, nothing in the record indicates that any party currently intends to call a witness who lives in the Eastern District of Texas. Because the majority of persons designated as likely to have relevant information are located in the Southern District of Texas, close to the Corpus Christi courthouse, reason dictates that the costs of obtaining the attendance of witnesses and other trial expenses would decrease for all parties if this action were transferred to Corpus Christi. *See Spiegelberg*, 402 F.Supp.2d at 791. Further, if the action were to remain in the Eastern District of Texas, Defendants would incur the expense of having to transport all their documentation more than two hundred miles to Beaumont. Hence, this factor also weighs in favor of a transfer.

4. *Other Practical Problems and Considerations*

a. *Place of the Alleged Wrong*

While Plaintiffs contend that it would be more convenient for them to litigate in this forum because Leonard Fisher was located in the Eastern District at the time they filed their verified original complaint, the Beaumont Division of the Eastern District of Texas lacks any significant connection to the underlying dispute. *See Spiegelberg*, 402 F.Supp.2d at 791; *Hanby*, 144 F.Supp.2d at 678. Dredges are transitory vessels that move from one job site to the next; therefore, the location of Leonard Fisher at any given moment carries little weight in the analysis. The incident giving rise to Plaintiffs' claims took place in the Corpus Christi Ship Channel, which is located in the Southern District of Texas. The place of the alleged wrong is a significant factor in the transfer analysis, and, here, it weighs heavily in favor of a transfer. *See Spiegelberg*, 402 F.Supp.2d at 791; *Hanby*, 144 F.Supp.2d at 678; *Houston Trial Reports, Inc.*, 85 F.Supp.2d at 670; *Robertson v. M/V Cape Hunter*, 979 F.Supp. 1105, 1108 (S.D.Tex.1997);

*Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1067 (S.D.Tex.1996); *Dupre,* 810 F.Supp. at 827. It is "incumbent upon the Eastern District Court to consider ... the site of the accident." *In re Volkswagen AG,* 371 F.3d at 205. In this instance, there is no indication that the purported accident occurred in whole or in part in the Eastern District of Texas. *See Hanby,* 144 F.Supp.2d at 678. Because the alleged wrong appears to have occurred solely within the Southern District of Texas, this factor strongly supports a transfer.

### b. *Plaintiffs' Choice of Forum*

In determining the propriety of a transfer of venue under § 1404(a), the plaintiff's choice of forum is not accorded the decisive weight it enjoyed under the doctrine of *forum non conveniens. See Reyno,* 454 U.S. at 253–56, 102 S.Ct. 252; *Radio Santa Fe, Inc.,* 687 F.Supp. at 287. Today, the choice of forum is "clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entm't,* 337 F.3d at 434 (citing *Garner v. Wolfinbarger,* 433 F.2d 117, 119 (5th Cir.1970)); *see Ramos,* 2006 WL 20780, at *2; *Shoemake,* 233 F.Supp.2d at 830–31. Nevertheless, "[t]he plaintiff's choice of forum is normally given deference, especially when the forum is the plaintiff's 'home.'" *Houston Trial Reports, Inc.,* 85 F.Supp.2d at 670; *see also Time, Inc.,* 366 F.2d at 698; *accord Spiegelberg,* 402 F.Supp.2d at 790; *Dearing v. Sigma Chem. Co.,* 1 F.Supp.2d 660, 665 (S.D.Tex.1998); *Henderson,* 918 F.Supp. at 1067–68; *Dupre,* 810 F.Supp. at 828. "'The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right.'" *Isbell,* 2004 WL 1243153, at *16 (quoting *E.I. Dupont de Nemours & Co. v. Diamond Shamrock Corp.,* 522 F.Supp. 588, 592 (D.Del.1981)); *accord The Whistler Group, Inc. v. PNI Corp.,* No. Civ. A. 3:03–CV–1536–G, 2003

WL 22939214, at *6 (N.D.Tex. Dec. 5, 2003).

Plaintiff's choice of forum is "given less weight when the plaintiff brings suit outside its home district." *Id.* at *2; *accord Isbell,* 2004 WL 1243153, at *13; *Shoemake,* 233 F.Supp.2d at 831; *Hanby,* 144 F.Supp.2d at 677; *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.,* 957 F.Supp. 843, 844 (E.D.Tex.1997). Moreover, Plaintiffs' choice of forum is accorded less weight when most of the operative facts occurred outside the district. *See Salinas,* 358 F.Supp.2d at 571; *accord Spiegelberg,* 402 F.Supp.2d at 790; *Bolt,* 351 F.Supp.2d at 600; *Isbell,* 2004 WL 1243153, at *13; *Minka Lighting, Inc. v. Trans Globe Imps., Inc.,* No. Civ. A. 3:02–CV–2538, 2003 WL 21251684, at *4 (N.D.Tex. May 23, 2003); *Shoemake,* 233 F.Supp.2d at 831; *Hanby,* 144 F.Supp.2d at 677. When the chosen district has little or no factual nexus to the case, the plaintiff's choice of forum is accorded less deference if other factors weigh in favor of a transfer. *See Spiegelberg,* 402 F.Supp.2d at 790; *Isbell,* 2004 WL 1243153, at *16; *Shoemake,* 233 F.Supp.2d at 830–31; *Conway v. Lenzing Aktiengesellschaft,* 222 F.Supp.2d 833, 834 (E.D.Tex.2002); *Hanby,* 144 F.Supp.2d at 677; *Robertson,* 42 F.Supp.2d at 656.

Although Empty Barge and Higman Barge argue that their chosen forum in the Eastern District of Texas is proper, Plaintiffs' choice of venue is not controlling in light of the substantial factors that favor a transfer of this case to the Southern District of Texas. *See Horseshoe Entm't,* 337 F.3d at 434; *Spiegelberg,* 402 F.Supp.2d at 790; *Isbell,* 2004 WL 1243153, at *16; *Shoemake,* 233 F.Supp.2d at 830–31; *Hanby,* 144 F.Supp.2d at 677; *Robertson,* 42 F.Supp.2d at 656. Plaintiffs' forum selection is entitled to less deference and carries little significance because none of the parties or witnesses reside in the Eastern

District of Texas and this venue has only a limited connection to the case. *See Time, Inc.,* 366 F.2d at 698; *Isbell,* 2004 WL 1243153, at *16; *Shoemake,* 233 F.Supp.2d at 830–31; *Conway,* 222 F.Supp.2d at 834; *Hanby,* 144 F.Supp.2d at 679. Where, as here, "the plaintiff's chosen forum has no factual nexus to the case and none of the parties reside in that forum," the plaintiff's choice of forum "carries very little significance if other factors weigh in favor of transfer." *Conway,* 222 F.Supp.2d at 834 (citing *Hanby,* 144 F.Supp.2d at 679).

The pleadings in this case and the submissions of the parties reflect that no acts giving rise to Plaintiffs' claims arose in the Eastern District of Texas. The allision at issue in this case took place in the Corpus Christi Ship Channel. Thus, the acts giving rise to Plaintiffs' claims arose in the Southern District of Texas, where both Plaintiffs' and Defendant's principal places of business are located. Moreover, all of the potential, key, party and non-party witnesses reside in the Southern District of Texas. While Plaintiffs contend that LEONARD FISHER has spent significant time in this district by having been present in the Eastern District for six months in 2003 and four months in 2006, it is undisputed that it was not present in this district at the time of the allision in January 2005. Moreover, it is only happenstance that it was dredging in this vicinity when the lawsuit was filed. Under these circumstances, Plaintiffs' chosen forum need not be afforded great deference. *See Spiegelberg,* 402 F.Supp.2d at 790; *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990–91 (E.D.N.Y.1991); *General Accident Ins. Co. v. Travelers Corp.,* 666 F.Supp. 1203, 1206 (N.D.Ill.1987).

### c. *Possibility of Delay and Prejudice if Case is Transferred*

One practical problem to be considered with regard to a transfer of venue is the possibility of delay because " '[a] prompt trial . . . is not without relevance to the convenience of parties and witnesses and the interest of justice.' " *Dupre,* 810 F.Supp. at 827 (quoting *Fannin v. Jones,* 229 F.2d 368, 369–70 (6th Cir.), *cert. denied,* 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956)); *accord Houston Trial Reports, Inc.,* 85 F.Supp.2d at 671–72. In *In re Horseshoe Entertainment,* the Fifth Circuit "recognize[d] that in rare and special circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." 337 F.3d at 434; *see also Spiegelberg,* 402 F.Supp.2d at 792; *Shoemake,* 233 F.Supp.2d at 834–35.

Empty Barge and Higman Barge have provided insufficient evidence to support any assertion that a transfer would result in significant delay or prejudice. While there appears to be less than a one-month difference in the median time between filing and trial in the Southern District of Texas as compared to the Eastern District of Texas, such difference is *de minimis.* Furthermore, in light of the fact that Empty Barge and Higman Barge filed their verified original complaint on February 10, 2006, less than five months ago, much work remains to be done before this case can proceed to trial. *See The Whistler Group, Inc.,* 2003 WL 22939214, at *6. No status conference with the court has been held, no scheduling order has been entered, no trial date has been set, and only limited discovery has taken place.

In this instance, a transfer of venue at the inception of litigation and before a trial date is set should neither result in a significant delay for resolving Plaintiffs' claims nor prejudice any party. *See Gonsalez Moreno,* 182 F.Supp.2d at 598; *McGinnis,* 181 F.Supp.2d at 687; *Bigham v. Envirocare of Utah, Inc.,* 123 F.Supp.2d 1046, 1051 (S.D.Tex.2000). Thus, this factor

does not militate against the transfer of this action.

Accordingly, the totality of the private interest factors weigh in favor of a transfer to the Southern District of Texas.

### C. *Public Interest Factors*

1. *Local Interest in Having Localized Disputes Decided at Home*

In addition to private interest considerations, the court must also consider public interest factors in determining whether a case should be transferred. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *In re Volkswagen AG,* 371 F.3d at 203; *Purdy,* 356 F.Supp.2d at 659. One element to be considered is the local interest in having localized controversies decided at home. *See Gilbert,* 330 U.S. at 509, 67 S.Ct. 839; *In re Volkswagen AG,* 371 F.3d at 203; *Spiegelberg,* 402 F.Supp.2d at 792; *Purdy,* 356 F.Supp.2d at 659. This public interest factor favors a transfer, as none of the parties are located in the Eastern District of Texas, and the incident giving rise to this action occurred in the Southern District of Texas, where all the parties are located. Because it is alleged that the M/V TEXIAN, HTCO 3009, and HTCO 3010 sustained damage as a result of an allision that took place in the Corpus Christi Ship Channel, the citizens of the Southern District of Texas, Corpus Christi Division, have a far greater interest in determining whether Defendants acted negligently in failing to locate the pipeline, to mark the location of the pipeline, or to comply with 33 U.S.C. § 403, which addresses the obstruction of navigable waters. *See Boutte,* 346 F.Supp.2d at 933 (finding that citizens have a legitimate interest in the safety conditions and seaworthiness of vessels doing business in their division).

Moreover, a court "possesses a compelling interest in ensuring that individuals who are injured within [its] district receive prompt and fair compensation for their injuries." *Dupre,* 810 F.Supp. at 827. Because the Plaintiffs' alleged damages were sustained in Corpus Christi, Texas, the Southern District has a more compelling interest in seeing that Empty Barge and Higman Barge promptly receive any compensation they are due.

Thus, adjudicating this matter in the Southern District of Texas would unburden a community with no strong local interest and would allow the court located in the district where Plaintiffs were purportedly damaged to determine whether they receive fair compensation. *See In re Volkswagen AG,* 371 F.3d at 206; *Shoemake,* 233 F.Supp.2d at 835; *Hanby,* 144 F.Supp.2d at 679; *Robertson,* 42 F.Supp.2d at 659; *Dupre,* 810 F.Supp. at 827.

2. *Administrative Difficulties Flowing from Court Congestion*

Another element to be considered stems from the administrative difficulties that arise when courts become congested with litigation that should have been handled at its place of origin. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *Langton,* 282 F.Supp.2d at 511; *Mohamed,* 90 F.Supp.2d at 766; *Rock Bit Int'l, Inc.,* 957 F.Supp. at 844. The efficient administration of the court system is vital to all litigants, as well as the public at large. *See Ferens v. John Deere Co.,* 494 U.S. 516, 529, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). Statistics maintained by the Administrative Office of the United States Courts reflect a minimal difference in civil caseloads between the two courts at issue. In light of the fact, however, that "filing cases without any rational relationship to the [Eastern] District could create congestion beyond [this district's] judicial resources," the court finds this factor supports transfer. *Hanby,* 144 F.Supp.2d at 679 (quoting *Rock Bit Int'l, Inc.,* 957 F.Supp. at 844).

3. *Familiarity of the Forum with the Law and Avoidance of Unnecessary Problems of Conflict of Laws*

There is no conflict of law problem presented, as both of the courts at issue are located in the same state and are governed by the same law. Moreover, there is no difference between the Eastern District's and Southern District's familiarity with the law that governs the case, as Plaintiffs' claims arise under federal admiralty law. *See Shoemake*, 233 F.Supp.2d at 835. As such, this factor has no bearing on the transfer analysis.

Hence, on balance, the public interest factors favor a transfer of this case to the Southern District of Texas.

III. *Conclusion*

Finally, Empty Barge and Higman Barge do not contend that they would be denied a fair trial in the Southern District of Texas. In the absence of such a concern, Defendant has met its burden to show that a balance of the relevant factors and circumstances substantially favors a trial in the Corpus Christi Division of the Southern District of Texas. Venue is proper in the Southern District of Texas because KFMS is subject to the court's personal jurisdiction there. *See* FED. R. CIV. P. 82; *In re McDonnell–Douglas Corp.*, 647 F.2d at 516; *Boutte*, 346 F.Supp.2d at 924; *Holmes*, 270 F.Supp.2d at 885; *Barnett*, 202 F.Supp.2d at 667; *LeBeouf Bros. Towing*, 2001 WL 12018, at *1; *Richoux*, 126 F.Supp.2d at 1009; *Denson*, 99 F.Supp.2d at 793. Moreover, a court with *in rem* jurisdiction over a party may properly transfer the *in rem* proceeding to a district court where the case could not originally have been brought. *See Continental Grain Co.*, 364 U.S. at 25, 80 S.Ct. 1470; *In re Int'l Marine Towing, Inc.*, 617 F.2d at 364.

In the instant action, a transfer of venue would not merely shift the balance of inconvenience from Defendants to Plaintiffs, but, instead, would lessen the burden on all parties and the witnesses. *See, e.g., Eliserio*, 388 F.Supp.2d at 778; *AMS Staff Leasing v. Starving Students, Inc.*, No. 3–03–CV–0283, 2003 WL 21436476, at *3 (N.D.Tex. June 18, 2003); *Carrot Bunch Co. v. Computer Friends, Inc.*, 218 F.Supp.2d 820, 827 (N.D.Tex.2002); *Salem Radio Representatives, Inc. v. Can Tel Mkt. Support Group*, 114 F.Supp.2d 553, 558 (N.D.Tex.2000); *Mohamed*, 90 F.Supp.2d at 775; *Sanders v. State St. Bank & Trust Co.*, 813 F.Supp. 529, 535 (S.D.Tex.1993); *Continental Airlines, Inc.*, 805 F.Supp. at 1395 n. 10. "The connection between Plaintiffs' claims and this district 'is minuscule and a transfer pursuant to Section 1404(a) is in order.'" *National Ass'n of Life Underwriters v. Clarke*, 761 F.Supp. 1285, 1293 (W.D.Tex.1991) (quoting *Sinko v. St. Louis Music Supply Co.*, 603 F.Supp. 649, 652 (W.D.Tex.1984)). The parties are located in the Southern District of Texas, the identified witnesses reside and/or work in the Southern District of Texas, and the alleged incident occurred there.

Accordingly, the court concludes that the convenience of the parties and witnesses, along with the interest of justice, would best be served by transferring this case to the Southern District of Texas, Corpus Christi Division. *See, e.g., Shoemake*, 233 F.Supp.2d at 836; *Conway*, 222 F.Supp.2d at 834; *Seabulk Offshore, Ltd.*, 201 F.Supp.2d at 756; *Karol v. Resolution Trust Corp.*, 839 F.Supp. 14, 16 (E.D.Tex. 1993). Therefore, KFMS's motion to transfer venue is GRANTED.